[No. B063400. Second Dist., Div. Two. Jan. 28, 1994.]

P. W. STEPHENS, INC., Plaintiff and Appellant, v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

**COUNSEL**

Hopper & Holmes and Douglas R. Holmes for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Pierce T. Selwood, Finley L. Taylor, Justine M. Casey, Anthony Castrilli, Richard A. Krimen, Charles W. Savage and Jody A. Carr for Defendant and Respondent.

**OPINION**

**BOREN, P. J.**—In this appeal, we conclude that respondent State Compensation Insurance Fund (SCIF) may impose "surcharges" as part of the premiums charged to its insureds. However, such surcharges must be reasonably and fairly imposed and are subject to administrative review. Accordingly, we affirm the decision of the trial court.

### BACKGROUND

Appellant P. W. Stephens, Inc. (appellant) provides residential and commercial asbestos abatement services. SCIF provides workers' compensation insurance to appellant. Appellant has no other recourse than to procure its insurance from SCIF, since no private insurance carriers are willing to offer such insurance to asbestos removal companies, such as appellant.

In its complaint for injunctive relief and damages, appellant alleged that as part of the premium SCIF charged appellant for workers' compensation insurance, SCIF imposed surcharges which are illegal, unreasonable and unfair. The trial court sustained SCIF's demurrer to the first amended complaint and dismissed the action.

### DISCUSSION

#### I. *SCIF and Its Rating Organization*

SCIF is at once both an agency of the state and an insurance carrier. In these two roles, it is self-operating and of a special and unique character. (*Burum v. State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 585-586 [184 P.2d 505]; *Gilmore v. State Comp. Ins. Fund.* (1937) 23 Cal.App.2d 325, 329 [73 P.2d 640].) While for purposes of the workers' compensation insurance

laws set forth in the Insurance Code (div. 2, pt. 3, chs. 2-4 [§§ 11630-11881])[1] SCIF is an "insurer" on the same basis as any private carrier offering workers' compensation insurance (§§ 11731, 11750.1, subd. (a)), the Legislature has also established it as a state agency with "unique characteristics" and one which is exempt from many of the immunities, requirements, restrictions and procedures applicable generally to state agencies. It is also subject to laws generally applicable to private insurance carriers (e.g., tax laws). (*Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504, 1511-1514 [11 Cal.Rptr.2d 161]; see § 11770 et seq.)

Article 2 of chapter 3 in the Insurance Code pertaining to workers' compensation policies sets forth what is known as the "Minimum Rating Law." The Minimum Rating Law empowers the Insurance Commissioner of the State of California (the Commissioner) to approve or issue "a classification of risks and premium rates relating to California workers' compensation insurance," which constitutes the minimum amount which insurers may charge as premiums to insureds falling within established categories or classifications. (§ 11732.) Thus, an insurer is prohibited from assessing premium rates *less than* those approved by the Commissioner. (§ 11736.) The purpose of the Minimum Rating Law is to require insurance premium rates which will assure adequate reserves to meet claims as they mature. (*Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.* (1957) 48 Cal.2d 71, 74-75 [307 P.2d 626].)

The Minimum Rating Law permits a system of "merit rating" or "schedule rating" and also allows "experience rating" to be used as a factor in setting rates for particular insureds. (§ 11730.) Essentially, workers' compensation insurers are permitted to determine premiums based on (1) schedules of rates or classifications by employers and occupations, and (2) the particular risk presented by the insured's experience or insurance history.

To assure that the minimum rates for workers' compensation rates are in fact "adequate" to meet all claims as they mature, and in order "to promote the public welfare," the Legislature authorized the establishment of rating organizations. (§ 11750 et seq.) A rating organization is defined in the Insurance Code as an organization having "as its primary object or purpose the collecting of rating information, the making of rates, rating plans and rating systems for workers' compensation insurance . . . and presenting them to the commissioner for issuance or approval." (§ 11750.1, subd. (b).) The "Workers' Compensation Insurance Rating Bureau" (the Rating Bureau)

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

is the rating organization of which SCIF is a member. Any such rating organization must be licensed by the Commissioner (§§ 11751.1-11751.25), and, subject to the approval of the Commissioner, it "may adopt any reasonable constitution, articles of incorporation, or agreement of association, and may make reasonable rules for the regulation of its members and the conduct of its business by bylaws or otherwise." (§ 11751.3, subd. (a).) A rating organization must also permit the Commissioner to appoint "four members of the public, two representing organized labor and two representing insured employers, to serve on the managing or governing committee of the [rating] organization." (§ 11751.1, subd. (h); see also §§ 11751.3, subd. (b), 11751.35, subd. (a).) In addition, SCIF is entitled "without election to membership on the managing or governing committee and on the classification and rating committee" of its rating organization. (§ 11751.3, subd. (a).)

As SCIF's licensed rating organization, the Rating Bureau publishes the California Workers' Compensation Insurance Manual (Jan. 1, 1991) (hereinafter, the Manual), a compendium of administrative rules governing the issuance of workers' compensation insurance coverage by SCIF and other carriers. The Manual also contains classifications, rates and rating systems which the Commissioner has approved pursuant to section 11730 et seq. The Manual is composed of what are properly considered administrative rules and regulations. Its contents have been promulgated by the Commissioner pursuant to Government Code section 11344 and incorporated by reference in the California Code of Regulations. (Cal. Code Regs., tit. 10, § 2350.)

## II. Surcharges

The parties do not dispute that SCIF and other insurers impose surcharges as a means of defraying the hazard, risk, accident experience or insurance history relating to a particular insured. Nothing in article 2 of chapter 4 (§§ 11820-11823), the Insurance Code provisions governing the manner in which SCIF's board of directors must fix SCIF's rates, directly prohibits such surcharges.[2] Although SCIF is a special and unique state agency, the Legislature also designed it to "be fairly competitive with other insurers,"

---

[2] An argument, however, can be made that the Legislature precluded surcharges when it enacted the provisions presented in article 2. These sections require SCIF to fix its rates not only regarding "the physical hazards of each industry, occupation or employment" (§ 11820) but also according to the hazard and risk presented by "each insured employer" and the employer's particular "plant, premises or work." (§ 11821, subd. (a).) In fixing its individual rates, SCIF is required to have a "reasonable regard for the accident experience and history of each such insured." (§ 11821, subd. (c).) The Legislature also set a formula for determination of SCIF's rates that would produce "a sufficient sum . . . [¶] . . . [t]o carry all claims to maturity . . . [,] [¶] . . . meet the reasonable expenses of conducting [SCIF's] business . . . [, and] [¶] . . . produce a reasonable surplus to cover the catastrophe hazard." (§ 11822.) It

also to be "more [] or less . . . self-supporting," and to "transact workers' compensation insurance required or authorized by law . . . to the same extent as any other insurer." (§§ 11775, 11778.) Other California insurers impose surcharges to reflect the risk and insurance exposure presented by a particular insured. It is well settled that the experience of a particular insured may be used as a factor in setting the premium. (*State Comp. Ins. Fund* v. *McConnell* (1956) 46 Cal.2d 330 [294 P.2d 440].) Likewise, section 11820 mandates that SCIF's rates "be fixed with due regard to the physical hazards of each industry, occupation or employment." SCIF reasonably argues that "premium" may generally represent an incorporation of "the rate, experience modification and any applicable surcharge." We do not think it matters much whether experience modification is reflected solely in a "premium rate" (§ 11823) or additionally in a "surcharge." The effect on the insured is the same as long as the insured has a means to rectify unfairness or arbitrariness in either case.

In the trial court, appellant alleged that SCIF could not lawfully impose any surcharge, and initially on this appeal so contended. Subsequent to oral argument, appellant abandoned this contention and now concedes that there is no legal prohibition. However, appellant still maintains its contentions that any surcharge must be reasonable and fair and that no administrative remedy exists.

 Appellant's concession that SCIF may properly impose surcharges is well taken. Indeed, rule VII of the Rating Bureau's Manual provides in part: "10. *Rates.* The basic Manual rates must be shown and applied on all policies. [¶] If an employer is subject to an experience modification, the modification must be shown on the policy and applied to the premium developed by the application of the basic Manual rates. [¶] A carrier may apply *surcharge* rates, a surcharge modification, or a surcharge premium to the policy. If applied, they shall clearly be shown separately from the basic Manual rates and the experience modification." (Italics added.) More recently, the Legislature added to the Minimum Rating Law the following provision, which recognizes the use of surcharges: "An insurer [including SCIF] shall not use any plan or methodology for the imposition of surcharges or reserves that is unfairly discriminatory." (§ 11737.5, subd. (a).)

---

may be fairly contended that SCIF's "premium rates" as published (see § 11823) must necessarily include consideration of all the risk exposure and fund reserve factors that SCIF uses to justify a surcharge as to individual policy holders, and that the Legislature therefore left no room for surcharges nor any need for them.

However, the Legislature last year enacted section 11737.5 which requires that "surcharges" not be "unfairly discriminatory." The enactment of the statute seems to recognize surcharges as a fact of life in the workers' compensation insurance business and leaves little room for the argument that the Legislature has precluded them.

Thus, workers' compensation carriers, including SCIF, are *not* prohibited from imposing surcharges.

### III. *Exhaustion of Administrative Remedies*

 Appellant's second contention, however, raises the more critical questions: To what extent may SCIF impose surcharges, and what is an aggrieved insured's remedy if SCIF has imposed arbitrary, exorbitant, discriminatory or unfair surcharges? We must look to the Insurance Code and to the Commissioner's regulations to find an answer.

Section 11732 provides that the system of merit rating approved by the Commissioner must "be uniform as to all insurers affected." Thus, while the experience of a particular insured is a permissible factor in setting the premium (*State Comp. Ins. Fund* v. *McConnell, supra,* 46 Cal.2d 330), the underlying classification used in setting the rate component of a premium must be uniform. With respect to the classification or merit rating system, the Commissioner is empowered to hold hearings when a classification or merit rating system is challenged. (§ 11734.)

SCIF has discretionary power to control the amount of dividends returned to its insureds. This discretion is broad because SCIF is obligated to maintain an appropriate surplus reserve fund. (*Gilmore* v. *State Comp. Ins. Fund, supra,* 23 Cal.App.2d at pp. 327-330.) It is implicit in the foregoing principle that SCIF also has broad discretion to determine the amount of the premiums it charges its policy holders. Nonetheless, the Legislature intended—as reflected in its directive that SCIF should "ultimately become neither more nor less than self-supporting" (§ 11775)—that SCIF not only set rates responsibly but also not extract excessive premiums. Where surcharges are a premium component, they must, consistent with SCIF's broad discretion in setting its premiums, be fair and reasonable. This interpretation obtains because SCIF may "not refuse to insure any workers' compensation risk" unless the insured is not complying with "the minimum requirements of the industrial accident prevention authorities" or presents a risk which is "beyond the safe carrying of the fund." (§ 11784, subd. (c).)

If surcharges could be imposed without limitation, SCIF could indirectly exclude certain risks merely by the device of imposing prohibitive surcharges and thereby thwart the legislative mandate to assure general coverage. More recently, the Legislature by its addition of section 11737.5 to the Workers' Compensation Insurance Law has specifically required that workers' compensation insurers, including SCIF, not impose any "surcharges" or maintain reserves that are "unfairly discriminatory." Thus, in our view the

Commissioner has been entrusted with responsibility to ensure that rates, premiums and even surcharges are fair and reasonable.

■ As a prerequisite to judicial intervention, a plaintiff is required to exhaust all administrative remedies. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715].) This procedure is required even if the administrative agency cannot provide the precise relief requested or needed. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 475-477 [131 Cal.Rptr. 90, 551 P.2d 410]; *Barnes* v. *State Farm Mut. Auto. Ins. Co.* (1993) 16 Cal.App.4th 365, 380 [20 Cal.Rptr.2d 87].) Exercise of administrative expertise preliminary to judicial review is especially appropriate where it is "apparent that a court would benefit immensely, and uniformity of decisions would be greatly enhanced, by having an expert administrative analysis available before attempting to grapple with such a potentially broad-ranging and technical question of insurance law." (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 400 [6 Cal.Rptr.2d 487, 826 P.2d 730], fn. omitted.) Such is the case here.

■ As to the question of whether or not a remedy has been provided here, section 11741 empowers the Commissioner to hold hearings and impose disciplinary penalties (e.g., suspension or revocation of license) regarding any workers' compensation insurer who violates certain provisions of the Insurance Code.[3]

The Rating Bureau's Manual, approved by the Commissioner as part of the Commissioner's administrative regulations (Cal. Code Regs., tit. 10, § 2350), specifically provides: "Any insured employer who believes his workers' compensation insurance coverage as written *or premium as charged* is contrary to the Manual or other regulations of the Insurance Commissioner governing the classification of risks and premium rates for workers' compensation insurance may file a complaint with the Bureau." (Manual, rule XII, ¶ 1, italics added.) Hence, appellant could have filed a complaint with the Rating Bureau regarding its premium including the surcharge component.

The Manual also specifies that appeals from decisions of the Rating Bureau may be filed with the Commissioner. (Manual, rule XII, ¶¶ 2-3.)

---

[3]Section 11741 provides: "The commissioner may, after hearing, suspend or revoke any insurer's certificate of authority to write . . . workers' compensation . . . insurance for violating any of the provisions of this article." Article 2 of chapter 3, the article specified in section 11741, includes section 11737.5.

Therefore, had the Rating Bureau adversely disposed of appellant's complaint, appellant could have appealed any such decision to the Commissioner.[4]

Since both the Commissioner by approving the Manual and the Rating Bureau in its role in preparing the Manual agree that the Rating Bureau may entertain complaints concerning any "premium as charged" (Manual, rule XII, ¶ 1) and because a "carrier may apply surcharge rates" as part of its premium (Manual, Rule VII, ¶ 10), the Rating Bureau, in light of its staff and experience with workers' compensation insurance, is in the best position initially to assess the propriety of any surcharges imposed by an insurer. This is true, whether or not the Rating Bureau considers itself a proper authority to evaluate surcharges.

The reason for the doctrine of exhaustion of administrative remedies is to allow the administrative agency to apply its expertise to complex issues such as those presented here. (*Barnes* v. *State Farm Mut. Auto. Ins. Co., supra*, 16 Cal.App.4th 365, 380.) And, it has been specifically held that the question of excessive insurance rates is "singularly within the technical competence of the Insurance Commissioner through the enlistment of agency resources." (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 983 [201 Cal.Rptr. 379].) Thus, before any judicial relief can be sought regarding the question of excessive surcharges, ". . . it is indispensable that the expertise of the insurance commissioner and the agency's staff be initially engaged to make such review." (*Id.* at p. 986.)

The Rating Bureau is among those "agency resources" which the Commissioner may appropriately enlist. We have been pointed to no particular reason why the Rating Bureau could not evaluate the propriety or fairness of a particular surcharge. However, whether or not appellant's complaint that the surcharge imposed here was excessive should have been initially referred

---

[4]Appellant has presented letters on this appeal indicating that both the Rating Bureau and the Commissioner's office declined to assist appellant regarding its assertion that SCIF was charging it an excessive surcharge. However, appellant did not present these letters to the trial court, and indeed told the trial court that no reason to amend existed because its "only argument . . . [was that] there is no administrative remedy for an unreasonable surcharge [because] [i]t's not in the Manual." As SCIF points out, more recently the present Commissioner has announced a more aggressive posture toward oversight of surcharges. In any event, had appellant formally filed a complaint as the Manual specifies, both the Rating Bureau and the Commissioner would have had to address the issue and at least some administrative record would have been created. The trial court then would have had the option to require the Commissioner to entertain the complaint if that office had failed to do so.

to the Rating Bureau, we view section 11741 as broad enough to empower the Commissioner to conduct hearings to assure that premiums are fairly assessed without discrimination. (See *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 311-314 [159 Cal.Rptr. 416].) Moreover, the doctrine of administrative remedies applies even where the remedy is created by a rule or regulation of the administrative agency rather than by statute (as long as the agency has jurisdiction over the matters in controversy, as the Commissioner certainly has). (*Lopez* v. *Civil Service Com.* (1991) 232 Cal.App.3d 307, 314 [283 Cal.Rptr. 447].) The Commissioner through promulgation of the Manual has created a mechanism whereby the imposition of a surcharge may be reviewed.

Such administrative review is appropriate because of the expertise of the Commissioner and his agency resources and because of the complexity of the matter presented. A determination of whether or not an overall premium, or a surcharge component of a premium, is unfair and discriminatory requires a comprehensive understanding of the manner in which the merit rating system schedules are generally applied in the workers' compensation insurance business. Additionally, a reviewing body requires familiarity with the manner in which surcharges are generally applied, and familiarity with the particular occupations or businesses of the insureds in question. Such expertise clearly resides with the Rating Bureau and with the office of the Commissioner and certainly not initially with our trial courts. Furthermore, the Legislature has charged the Commissioner with the authority and responsibility to ensure that premiums charged for workers' compensation insurance are not only adequate, but also fair and nondiscriminatory. Only after an administrative record is created in which comparative data is provided, analyzed and rationalized by the experts familiar with the methodologies involved, should a trial judge be placed in the position of assessing the legal validity or reasonableness of premiums charged by SCIF.

The Legislature may well be advised to clarify the parameters of such an administrative remedy. But, in any event, our conclusion is that an administrative remedy, albeit one with warts, is and has been available and must first be exhausted before appellant may bring this matter to the superior court. Because appellant failed to seek an administrative remedy through the Rating Bureau and/or through the office of the Commissioner, the superior court was without jurisdiction to review appellant's allegations and therefore properly sustained SCIF's demurrers.

## DISPOSITION

The judgment is affirmed. Each side to bear its own costs on appeal.

Gates, J., and Nott, J., concurred.