[No. B091406. Second Dist., Div. One. Dec. 18, 1996.]

MARIE A. VERNON, Plaintiff and Appellant, v.
GREAT WESTERN BANK, Defendant and Respondent.

**COUNSEL**

Alvin L. Pittman for Plaintiff and Appellant.

Anthony F. Pantoni for Defendant and Respondent.

## OPINION

**VOGEL (Miriam A.), J.**—Marie A. Vernon sued Great Western Bank (GWB), alleging three distinct causes of action, two of which were resolved against Vernon on GWB's motion for summary adjudication of issues. Vernon then failed to diligently prosecute her case to completion and it was dismissed. She appeals, contending the dismissal was an abuse of discretion and that the summary adjudication order was erroneous. We affirm the order of dismissal. We also hold that, on appeal from an order dismissing a case for a failure to diligently prosecute, there can be no review of earlier, nonappealable summary adjudication orders that would otherwise be reviewed on an appeal from a final judgment on the merits.

### BACKGROUND

In January 1991, Vernon sued GWB for gender and race discrimination and for employment "retaliation." GWB answered and in December 1993, moved for summary adjudication of Vernon's discrimination causes of action. The trial court (Hon. Lois Anderson Smaltz) granted the motion, leaving Vernon with her retaliation claim. Trial was set for March 1, 1994. Vernon's lawyer (Alvin Pittman) appeared on that date and orally moved for a continuance on the ground that he was engaged in another trial. When the motion was denied and the case was assigned out for trial, Vernon filed a peremptory challenge, the case was returned to the civil trailing calendar, and the parties were placed on one-hour call. On March 23, at Vernon's request, the trial court removed the case from the trailing calendar. On April 21 and 27, the parties were called into court but trial was continued both times due to Pittman's continuing trial conflicts. On April 27, the court ordered the parties to appear for trial on May 9, and ordered Pittman not to become engaged in another trial.

On May 9, the case was placed on the trailing calendar. On May 11, the case was assigned for trial (Hon. Charles E. Frisco). The parties and their lawyers appeared before Judge Frisco for two days for the resolution of motions, and everyone was ordered to return on May 17 for jury selection. On May 17, both Vernon and Pittman failed to appear. The trial court issued a bench warrant for Pittman, held it until May 25, ordered Pittman to appear on that date to show cause why the warrant should not issue, again ordered Pittman to keep his calendar clear, and trailed the trial to May 31.

On May 25, Pittman appeared in response to the OSC and explained he would be unable to participate in any hearing or commence trial until early

June because of an alleged injury. The trial court ordered Pittman to appear on June 1, directed him to bring with him a report from his physician describing his medical condition, and trailed the trial to June 6. Trial commenced on June 6 but the jury was unable to reach a verdict and a mistrial was declared. In August, the trial court set October 5 as the new trial date. On September 21, Vernon requested a continuance on the grounds that (1) Pittman was distraught over the death of a godson and (2) Vernon was unable to attend her trial due to "stress," supporting the motion with a physician's declaration attesting that Vernon was then unable to attend a trial due to stress and would be unable to attend for at least 30 days. Following a hearing at which an attorney made a "special" appearance for Pittman, the trial court (Hon. Chris R. Conway) denied the motion and ordered the parties to appear for trial on October 5.

On October 5, the case was assigned out for trial (Hon. Daniel Solis Pratt) but neither Vernon nor Pittman appeared. Instead, an attorney made a "special appearance" to advise the court that Pittman was at that moment reporting ready for another trial in Torrance. Judge Pratt and GWB's lawyers and witnesses waited six hours for Pittman to arrive. When Pittman finally appeared that afternoon, he moved for a continuance, stating he was too distraught to try Vernon's case (but was able to proceed to trial in Torrance because that was a "different kind of case" and did not require as much preparation as Vernon's case). The trial court denied Pittman's motion and issued an order to show cause why Vernon's case should not be dismissed, with hearing set for November 18.

On November 18, Pittman again failed to appear. Another lawyer (this was the third one) made another "special appearance" and a hearing was held, after which the trial court (Judge Pratt) found a "pattern of conduct" showing a failure to prosecute the case diligently and a total disregard of the court's orders. Judge Pratt dismissed Vernon's case with prejudice (Code Civ. Proc., § 583.410, subd. (a))[1] and, on the same day (November 18, 1994), signed an order of dismissal.

On January 3, 1995, GWB's attorney submitted a "judgment" to Judge Smaltz (who had granted GWB's motion for summary adjudication), which was signed and entered that day. This "judgment" states that the first two causes of action were resolved by summary adjudication and incorrectly states that the "third cause of action" was dismissed on November 18, 1994 (in fact, the entire action was dismissed in November 1994). On March 3,

---

[1]All section references are to the Code of Civil Procedure.

Vernon filed a notice of appeal "from the Judgment signed by the Honorable Lois Anderson Smaltz and entered on January 3, 1995 . . . ."

## DISCUSSION

Vernon contends the trial court (1) abused its discretion when it dismissed her case, and (2) erred in summarily adjudicating her discrimination causes of action. We will explain why she is wrong about the dismissal and why, as a result, we do not reach the summary adjudication order.[2]

### I.

We agree with the trial court that this record reflects a pattern and history of delay that "hits you in the face when you go through it," and we therefore reject Vernon's contention that the court abused its discretion when it dismissed her case.

At the pretrial stage, Vernon did little if anything to prosecute her action. Although the case was filed in January 1991, it does not appear that GWB was served until late that year. In September, Vernon filed a first amended complaint. In November, GWB answered. From the record before us, it appears that no action of any kind was initiated by Vernon between November 1991 and mid-1993, and that the only thing she did do was to appear when her deposition was noticed by GWB during the summer of 1992. Two and one-half years after the case was filed (in July 1993), Vernon filed a second amended complaint, which GWB answered, and it was in January

---

[2]There is some doubt in our minds about whether the appeal is timely, but our inability to determine whether the November 18, 1994, order of dismissal was served on the attorneys of record persuades us to treat the appeal as timely. In the record on appeal, the order shows on its face that it consists of two pages, but only one is in the record (and that page does not show service on anyone), and the superior court file is similarly ambiguous. Had the November 18 order been served, an appeal filed the following March would have been untimely. (Cal. Rules of Court, rule 2(a).) Absent notice of entry of the November order, we treat the March notice of appeal as timely (*id.*, rule 2(a)(3)), notwithstanding that it mentions only the judgment, because the judgment does refer to the dismissal, albeit incorrectly. (*Id.*, rule 1(a); *D'Avola* v. *Anderson* (1996) 47 Cal.App.4th 358, 361 [54 Cal.Rptr.2d 689] [a notice of appeal is liberally construed in favor of its sufficiency]; *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289] [liberal construction appropriate where it is clear respondent has not been misled].) For the record, however, the order of dismissal was a final, appealable order. (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720]; § 581d; *Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967, 971 [227 Cal.Rptr. 718] [the language of § 581d (that the dismissal is effective for "all purposes") includes an appeal from the order of dismissal and means that such an order constitutes a judgment for purposes of § 904.1].)

1994 that GWB successfully moved for summary adjudication of two of Vernon's three causes of action.[3]

At the trial stage (March to November 1994), the record speaks for itself. Time and time again, Vernon and her lawyer requested continuances and, when they were denied, simply failed to appear. Pittman repeatedly became engaged in other trials, notwithstanding orders that he remain available to try this case, and he then claimed a somewhat amorphous stress condition that was so severe he could not try this case but could become engaged in another trial. In an exercise of its broad discretion, the trial court repeatedly rejected Vernon's and Pittman's excuses, and there is nothing about this record to suggest the trial court was arbitrary or capricious, that it exceeded the bounds of reason, or that it at any time abused its discretion.[4] (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564-566 [86 Cal.Rptr. 65, 468 P.2d 193].) Simply put, we are satisfied that the court considered the credibility of the explanations provided by Vernon and Pittman and, based upon their prior conduct, determined they were fabricated in order to obtain a delay for Pittman to conclude yet one more trial before attending to this one. (*Dubois* v. *Corroon & Black Corp.* (1993) 12 Cal.App.4th 1689, 1695 [16 Cal.Rptr.2d 719].)

We reject Vernon's attempt to salvage her case by focusing solely on the five-month period between the mistrial and the order of dismissal. Although it is true that, all things being equal, a party has two years following a mistrial to bring her case to trial (§ 583.420), all things were not equal here. Vernon and her lawyer both failed to appear on the day the retrial was to begin (October 5), knowing their September 29 request for yet another continuance had been denied.[5] The failure to appear at trial was just another variation of Vernon's established theme—a total failure to diligently prosecute her case—and no more was needed to justify the trial court's order

---

[3]It does Vernon no good if we assume her case was gutted by the elimination of these two causes of action (a determination we could not in any event make on the record before us). Assuming her remaining cause of action was not by itself worth pursuing, she could have filed a petition for a writ of mandate (§ 437c, subd. (*l*)) and, if that failed, she could have consented to entry of a final judgment to facilitate an appeal (*Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1111 [4 Cal.Rptr.2d 857, 824 P.2d 663] [although a consent or stipulated judgment is not normally appealable, an exception is recognized when consent was merely given to facilitate an appeal following adverse determination of a critical issue]).

[4]The fact that three different judges heard and denied Vernon's motions for continuances supports our conclusion that Vernon's excuses were unsupported by credible evidence of good cause.

[5]Although we do not suggest she was required to do so, we note that Vernon did not seek a writ of mandate when her motion for a continuance was denied (*Whalen* v. *Superior Court* (1960) 184 Cal.App.2d 598, 601-602 [7 Cal.Rptr. 610]), and chose instead to openly flaunt the court's order by failing to appear on the day of trial.

of dismissal. (§ 581, subd. (b)(5) [an action may be dismissed when either party fails to appear on the day of trial and the other party appears and asks for dismissal]; Cal. Rules of Court, rule 226; *Hurtado* v. *Western Medical Center* (1990) 222 Cal.App.3d 1198, 1204 [272 Cal.Rptr. 324] [dismissal is proper when the plaintiff is not prepared to proceed on the day of trial].)

Accordingly, whether viewed as a dismissal for failure to diligently prosecute, or as a dismissal for failure to appear on the day of trial, the November 18, 1994, order of dismissal was proper. In short, when Vernon invoked the power of the court to resolve her dispute with GWB, she agreed to abide by rules designed to facilitate the orderly and equitable resolution not only of her dispute, but also of the thousands of other cases pending before the court at the same time. The power of dismissal is the court's means of enforcing those rules, and it exists so the court can manage its own affairs and preserve respect for the integrity of its process. To permit a party to do what Vernon did in this case would eviscerate that power. That we refuse to do.

## II.

Vernon's briefs also attack the summary adjudication order on the ground that there existed triable issues of material fact. For the reasons we will now explain, we do not reach that issue.

Had Vernon proceeded to trial on her remaining cause of action and lost, she could have obtained review of the summary adjudication order on appeal from the judgment entered after trial. (§ 437c, subd. (m)(1); see also *Trani* v. *R.G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314, 315-316 [125 Cal.Rptr. 34]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1996) Summary Judgment, ¶ 10:394, p. 10-106.11.) But that is not what happened, and what did happen dramatically affects the scope of this appeal. Because we have upheld the dismissal for failure to prosecute, a decision by us that the summary adjudication motion was wrongly decided would accomplish nothing—the case would remain dismissed and the result would be Pyrrhic. Had we reversed the order of dismissal, the issue would still not be reviewable—because a reversal of the dismissal would mean Vernon could try her third cause of action on the merits, after which a final judgment would be entered, and earlier nonappealable orders would merge into that judgment and be subject to review. (§ 904.1; *Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 960 [123 Cal.Rptr. 309].) To hold otherwise would reward Vernon for

her dilatory tactics by giving her an interlocutory appeal of the nonappealable summary adjudication order.

Although we have been unable to find any California cases addressing this issue of appellate review, it has been resolved by several federal courts in the same manner we resolve it today.[6] Thus, for example, in *Huey* v. *Teledyne, Inc.* (9th Cir. 1979) 608 F.2d 1234, a class action, the Ninth Circuit affirmed a discretionary dismissal, then refused to consider the trial court's earlier order refusing to certify the class, notwithstanding that the certification order was not an appealable order and notwithstanding the plaintiff's claim that the denial of certification had effectively eviscerated the case. (*Id.* at pp. 1238-1239.) To hold otherwise, explained the court, would permit a litigant to wait for dismissal and, on appeal from the dismissal, attack a nonappealable order, thereby undermining the ability of trial judges to achieve the orderly and expeditious disposition of cases. (*Id.* at p. 1239; see also *Sullivan* v. *Pacific Indem. Co.* (3d Cir. 1977) 566 F.2d 444, 445-446; *Ash* v. *Cvetkov* (9th Cir. 1984) 739 F.2d 493, 497-498 [on appeal from a judgment of dismissal for failure to prosecute, the court will not review earlier orders which would ordinarily merge into a final judgment *whether the dismissal was willful or the result of negligence or mistake*]; *Weil* v. *Investment/ Indicators, Research & Management* (9th Cir. 1981) 647 F.2d 18, 26 [*even where the dismissal is improper and therefore reversed*, the earlier order will not be reviewed on the theory that it is only properly before the court on appeal from the final judgment]; *Dannenberg* v. *Software Toolworks Inc.* (9th Cir. 1994) 16 F.3d 1073, 1076; but see *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2d Cir. 1990) 903 F.2d 176.)[7]

▪ Accordingly, we hold that where, as here, a case is dismissed based upon the plaintiff's failure to diligently prosecute, she cannot on appeal from that order of dismissal obtain review of an earlier, nonappealable summary

---

[6]In *Nye* v. *20th Century Ins. Co.* (1990) 225 Cal.App.3d 1041 [275 Cal.Rptr. 319], the plaintiff appealed from an order dismissing her lawsuit for failure to prosecute *and* from an earlier order granting the defendant's motion for summary adjudication of one issue (that the plaintiff could not recover punitive damages). (*Id.* at pp. 1043-1044, fn. 1.) Division Four of our Court dismissed the appeal from the nonappealable summary adjudication order (*ibid.*), affirmed the order of dismissal (*id.* at p. 1046), and concluded without discussion that, in view of the affirmance of the dismissal, there was "no reason to construe the purported appeal from the summary adjudication order as an application for a writ." (*Id.* at p. 1044, fn. 1.)

[7]In *Huey*, the court expressed some concern about the unavoidable effect of its decision in forcing some small claims to trial after the rest of a class action had been gutted. (*Huey* v. *Teledyne, Inc., supra*, 608 F.2d at p. 1240.) As noted above, however, that is not a concern in our situation—had Vernon concluded that it made no economic sense to try only her remaining cause of action, she could have stipulated to a judgment from which she could have pursued an appeal. (*Connolly* v. *County of Orange, supra*, 1 Cal.4th at p. 1111.)

adjudication order that would otherwise be reviewed on appeal from a final judgment rendered on the merits of the case.[8]

DISPOSITION

The order and judgment are affirmed.

Spencer, P. J., and Ortega, J., concurred.

---

[8]We limit our holding to predismissal summary adjudication orders and express no view about whether other nonappealable orders may be reviewed on an appeal from an involuntary dismissal. (See *Salina* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1992) 5 Cal.App.4th 1, 8-9 [6 Cal.Rptr.2d 446] [order denying earlier motion to specially set trial date reviewed on appeal from judgment of dismissal for failure to bring case to trial within five years, because the earlier order necessarily affected the judgment].)