[No. B149183. Second Dist., Div. Three. June 19, 2003.]

RAIL SERVICES OF AMERICA et al., Plaintiffs and Appellants, v. STATE COMPENSATION INSURANCE FUND, Defendant and Respondent.

**COUNSEL**

Law Office of Arthur J. Levine, Arthur J. Levine; Law Office of Alan Goldberg and Alan Goldberg for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Andre J. Cronthall, Barry Sullivan; Richard A. Krimen, Charles W. Savage and Judith D. Sapper for Defendant and Respondent.

OPINION

**CROSKEY, J.**—Rail Services of America and Pacific Rail Services (collectively, plaintiffs) sued State Compensation Insurance Fund (SCIF) for alleged misconduct related to premiums SCIF charged them for workers' compensation insurance.[1] SCIF made motions for summary adjudication or summary judgment as to plaintiffs' causes of action, and succeeded in obtaining a favorable adjudication as to all but plaintiffs' second cause of action.

The trial court denied plaintiffs' attempts to obtain a final, appealable judgment without dismissing that remaining cause of action. Instead, it ordered them to comply with SCIF's discovery requests before trial, so that trial preparation on that remaining cause of action might go forward. Plaintiffs willfully refused to provide such discovery. The trial court then dismissed the action as a terminating sanction. Plaintiffs now appeal the judgment entered after the order of dismissal. In that appeal, plaintiffs attack not only the order of dismissal but also the earlier orders granting SCIF's motion for summary adjudication. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs provided employees to perform contract stevedoring work. Southern Pacific Transportation Company (Southern Pacific) used plaintiffs' services. On December 17, 1991, Southern Pacific gave plaintiffs a 60-day notice it was going to terminate the parties' stevedoring contract. When plaintiffs' risk manager told plaintiffs' existing workers' compensation insurer that this contract might be terminated, the insurer said it would not renew plaintiffs' existing workers' compensation liability insurance policy, effective February 1, 1992. Thus, this left a bit more than two weeks during which plaintiffs' employees would be working but plaintiffs would be without insurance for their workers' compensation liabilities—obviously an undesirable position for any employer, but particularly so for one with a workforce engaged in stevedoring.

Plaintiffs' insurance broker found other insurers who would provide plaintiffs with coverage, but on terms that plaintiffs found undesirable, such as required reimbursement of claim payments, large deductibles, or no maximum aggregate payments. In mid-January, plaintiffs' risk manager contacted

---

[1] Stevedoring Services of America (Stevedoring) was also a plaintiff. However, SCIF moved for summary judgment as to Stevedoring on the ground that it lacked standing to sue, which motion was granted. The resulting judgment against Stevedoring was affirmed on appeal (*Stevedoring Services of America v. State Comp. Ins. Fund* (July 20, 2000, B122646) [nonpub. opn.].)

[2] The facts recited here are taken from the reporter's and clerk's transcripts. There is no relevant dispute over these facts, but rather over the legal effect of such facts.

SCIF to see the terms of the coverage it would provide. SCIF stated that it would provide coverage, *but only in exchange for a nonrefundable agreed minimum premium of $1,365,000.* Although plaintiffs' risk manager tried to persuade SCIF to agree to different and more favorable terms, SCIF would not do so. Apparently left with no better alternative, plaintiffs accepted SCIF's offer of coverage and paid the nonrefundable minimum premium.

On February 12, 1992, Southern Pacific did cancel plaintiffs' stevedoring contract. Thus, the agreed minimum premium of $1,365,000 covered a risk period of only 15 days.[3] After SCIF refused plaintiffs' request for a refund of most of the nonrefundable premium, and also allegedly mishandled certain claims by overpaying them, thus allegedly causing plaintiffs' future premiums to be inflated, plaintiffs filed suit in December 1995, alleging that SCIF's retention of the nonrefundable agreed minimum premium was "arbitrary, unfairly discriminatory and unconscionable," and "unlawful and excessive."

The complaint, which was amended several times, ultimately contained five "causes of action" (the fifth cause of action was really a remedy, and was dismissed via demurrer): (1) negligence, (2) tortious breach of the implied covenant of good faith and fair dealing, (3) deceit, (4) reformation of contract, and (5) imposition of constructive trust. The second cause of action was based on SCIF's alleged overpayment of claims, which caused plaintiffs' future insurance premiums to be inflated. The other causes of action all related to and arose from SCIF's alleged overcharging for its premium, and its nonrefundable provision, which plaintiffs contended violated certain insurance code sections.[4]

SCIF moved for summary adjudication of the first, third and fourth causes of action only, on the ground that the premium charged was lawful, was disclosed to plaintiffs, and that there was no legal basis for reforming the insurance policy. This motion was granted, leaving only the second cause of action to be resolved. Because of the granting of the motion for summary adjudication, the damages that plaintiffs had hoped to recover at trial were significantly reduced (plaintiffs had contended they had been overcharged almost $1.36 million; the summary adjudication ruling meant there was no overcharging for the premium). It became quite obvious that plaintiffs did not

---

[3] However, the record reflects that SCIF ultimately paid out some $915,000 for claims arising out of this brief period.

[4] This negligence cause of action was premised, according to the trial court, on SCIF's alleged duty to set reasonable rates, surcharges and premiums. Thus, if such duty is based on a particular code section or sections, the more specific cause of action would be one for breach of that section or sections.

want to proceed to trial on their remaining cause of action for bad faith, but instead preferred to obtain an appellate review of the adjudication ruling that had undercut their damages. Unfortunately, for plaintiffs, that ruling had *not* resulted in a final, appealable order.

Plaintiffs first petitioned for a writ, which was summarily denied. They then attempted to persuade the trial court to enter a "final" judgment so that they could appeal, *even though the second cause of action had not been resolved.* They even attempted to file a release of the remaining damages recoverable for the alleged improper claims handling, arguing that this would allow the trial court to enter a "final" judgment. However, they would not dismiss the second cause of action—apparently, because the statute of limitations had run on it, so they would not have been able to refile it in the event that their appeal of the resulting final judgment was successful.

The trial court refused to enter a final judgment, because there could be no final judgment as long as one cause of action remained to be tried between the parties. Instead, it ordered plaintiffs to comply with the final discovery matters left before trial, which had been stayed as the result of an earlier appeal. Plaintiffs did not want to go through discovery, and suggested that they would just go to trial on the second cause of action without putting on any evidence, and let judgment be entered against them. SCIF, however, intended to put on a defense, because it wanted to have a good record for an appeal. Therefore, it wanted to go forward with its discovery. Over plaintiffs' objections, the trial court agreed that SCIF could proceed with discovery (which had been stayed during the earlier appeal).

Plaintiffs refused to cooperate, so SCIF obtained an order to compel discovery. Plaintiffs then clearly and categorically disobeyed the order to compel. The trial court found that the refusal was willful, and that no other, lesser sanction would compel plaintiffs to obey, and therefore dismissed the entire action as a discovery sanction. SCIF prepared a proposed order of dismissal, and plaintiffs objected to its wording as implying that the sanction was the dismissal of the entire action, whereas, the other causes of action having been dismissed, only the second cause of action remained to be dismissed. The trial court apparently rejected that argument as it signed the proposed order and a judgment was entered on the entire action in SCIF's favor.[5]

On April 2, 2001, plaintiffs filed a notice of appeal "from the judgment/order of dismissal entered against them on or about February 2,

---

[5] While the parties spend a lot of time arguing about the point, the ultimate legal result of the trial court's dismissal of the second cause of action (the last remaining cause of action) was, given the earlier rulings, a judgment disposing of the entire action.

2001." In the case information statement that plaintiffs filed with this court on April 26, 2001, they described their appeal as being from "[d]ismissal order as discovery sanction; constitutes judgment under CCP 904.1(a)(1)."

## CONTENTIONS ON APPEAL

The first issue raised by this appeal is whether an initial determination that the trial court did not abuse its discretion by dismissing the action as a sanction resolves this entire appeal. SCIF contends that if we determine that there was no abuse of discretion with respect to the terminating sanction order, the one final judgment rule bars review of the trial court's rulings on any other orders; SCIF contends such orders are interlocutory and non-reviewable, citing *Vernon* v. *Great Western Bank* (1996) 51 Cal.App.4th 1007 [59 Cal.Rptr.2d 350] (*Vernon*).

Plaintiffs, on the other hand, contend that the trial court did err by applying a terminating sanction. They also contend that, even if such order was not an abuse of discretion, we must review the trial court's earlier, interlocutory orders, because (1) *Vernon* is distinguishable, and (2) the propriety of the final dismissal order depends on the propriety of the earlier orders. This alleged interdependence arises from plaintiffs' contention that *all* their causes of action required an adjudication of the "reasonableness" of the premium charged—which was the element of their second cause of action which required a trial of that cause of action.

Plaintiffs also contend that the trial court improperly failed to enter a final, appealable judgment when they released all damages claimed in their second cause of action, and then ordered them to comply with discovery. In other words, if the trial court had granted their request, and entered a final, appealable judgment, it then would not have been in a position to order them to comply with discovery requests—and could not have entered a terminating sanction for failure to comply with such orders.

Plaintiffs also contend, based on the assumption that the orders that preceded the final order of dismissal are reviewable, that the trial court erred by concluding that Insurance Code sections 11840 and 11841[6] did not apply to SCIF when it set its nonrefundable minimum premiums, and that, in fact, the nonrefundable premium SCIF charged plaintiffs was a violation of those code sections. Plaintiffs also contend that the trial court erred by granting SCIF's motion for attorney fees. SCIF disputes each of these contentions.

For the reasons discussed below, we conclude that (1) the trial court did not err by requiring plaintiffs to prosecute their second cause of action; in

---

[6] All further statutory references are to the Insurance Code, except as otherwise noted.

other words, it did not err by ordering plaintiffs to comply with discovery and by refusing to enter a final judgment simply because plaintiffs filed a release of some damages; (2) the dismissal of plaintiffs' *second* cause of action (rather than the entire action) as a discovery sanction was not an abuse of discretion, but it did allow a final judgment to then be entered as to the *entire* action; (3) in light of the now final judgment as to the entire action, plaintiffs may properly seek review of the earlier nonappealable orders granting summary adjudication as to its *other* causes of action in this appeal; (4) as a matter of law, plaintiffs failed to state causes of action against SCIF and the trial court's summary adjudication of those causes of action was proper and (5) the trial court did not err by awarding SCIF its attorney fees.

## DISCUSSION

### 1. *The Order Dismissing the Action as Discovery Sanction*

The trial court did not err by requiring plaintiffs to prosecute their second cause of action; in other words, it did not err by ordering plaintiffs to comply with discovery and by refusing to enter a final judgment simply because plaintiffs were willing to file a release of some damages (which release was worded so that, if plaintiffs were successful on appeal, they could pursue damages upon remand). The release of remaining damages proposed by plaintiffs would not have disposed of the remaining cause of action between plaintiffs and SCIF, so the trial court did not err by refusing to accept it and enter a "final" judgment. Because plaintiffs would not dismiss the second cause of action, the only way to dispose of it was to try it. And because the matter had to be tried, SCIF was entitled to conduct discovery so it could establish, at trial, whether or not it was liable for bad faith when it settled certain claims, because the issue of liability was separate from the issue of the amount of damages.

Plaintiffs' refusal to comply with discovery was straightforward and unambiguous, and it was clear that they would not provide discovery. Accordingly, a sanction consisting of dismissal of the *remaining* cause of action—the one for which discovery was needed—was not an abuse of discretion. ■ Dismissal is a proper sanction to punish the failure to comply with a rule or an order only if the court's authority cannot be vindicated through the imposition of a less severe alternative. (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 917 [231 Cal.Rptr. 738, 727 P.2d 1019]; *People v. Lockwood* (1998) 66 Cal.App.4th 222, 230 [77 Cal.Rptr.2d 769].) For instance, when the rule or order violated concerns discovery, the trial court may impose sanctions that " ' are suitable *and necessary* to enable the party seeking discovery to obtain the objects of the discovery he [or she] seeks but the court may *not* impose sanctions which are designed *not to*

*accomplish the objects of the discovery but to impose punishment*" ' "
(*Midwife v. Bernal* (1988) 203 Cal.App.3d 57, 64 [249 Cal.Rptr. 708],
quoting *Petersen v. City of Vallejo* (1968) 259 Cal.App.2d 757, 782 [66
Cal.Rptr. 776], italics added.) ■ When only one cause of action remains
as to which discovery is needed, it is obviously unnecessary to dismiss any
cause of action save that one to give the defendant, one way or another, the
object of the discovery sought to be compelled. To dismiss as a sanction
causes of action already resolved by way of summary adjudication—with the
result that they would be unavailable for appellate review—would be a
punishment, not a remedy.

SCIF contends that the trial court dismissed the *entire* action as the
sanction. The record does not demonstrate that this was the court's intent. If
the trial court *had* intended to dismiss the entire case as a sanction, that
would have been an abuse of discretion. That is not the case here, however.
The discovery with which plaintiffs refused to comply related only to the
remaining second cause of action; thus, the only sanctionable conduct
necessarily related to *that one* cause of action. ■ A discovery sanction
may not place the party seeking discovery in a better position than it would
have been in if the desired discovery had been provided and had been
favorable. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr.
499].) Here, at best, SCIF could have prevailed at trial of the second cause of
action only.

■ However, the final judgment was in fact based on the prior orders
granting a summary adjudication of the first, third and fourth causes of
action. These were not previously appealable and could not be reviewed until
entry of a final judgment as to the entire action. *The only, and sanction-based,
dismissal was as to the second cause of action.* We will not presume that the
trial court intended otherwise. The dismissal of that remaining cause of
action, however, was all that was required in order to permit the entry of a
final judgment. The causes of action which were summarily adjudicated, as
well as any other prior interlocutory orders, are now subsumed in a final
judgment, and are subject to review on appeal from that final judgment.
(*Janssen v. County of Los Angeles* (1942) 50 Cal.App.2d 45, 47 [123 P.2d
122]; Code Civ. Proc., § 906.)

2. *Review of the Orders That Preceded the Final Dismissal Order Is
   Proper*

SCIF contends that, pursuant to the holding in *Vernon, supra,* 51
Cal.App.4th 1007, we should decline to review the trial court's earlier orders.
In *Vernon, supra,* 51 Cal.App.4th 1007, the trial court dismissed an entire
action, and the plaintiff appealed. The appellate court found no abuse of

discretion in the sanction of dismissal, given that "[a]t the pretrial stage, [the plaintiff] did little if anything to prosecute her action." (*Id.* at p. 1011.) At the trial stage, "[t]ime and time again, [the plaintiff] and her lawyer requested continuances and, when they were denied, simply failed to appear." (*Id.* at p. 1012.) It refused to review any earlier, pretrial orders, despite the fact that the final straw precipitating the dismissal had occurred at the trial stage.

Here, however, plaintiffs actively prosecuted their case, and appeared for all hearings. They also offered to attend the trial and allow judgment to be taken against them in order to obtain a final judgment from which to appeal the trial court's earlier rulings, and even to file a release of their damages claim as to the second cause of action. Given plaintiffs' active participation in their case at both the pretrial and offer to participate, in a limited way, in the trial stage, and the fact that the order of dismissal was entered not because plaintiffs neglected their case, but instead refused to comply with discovery as a trial tactic apparently designed to move the case forward by creating a final judgment, we find SCIF's reliance on *Vernon* to be misplaced. We therefore conclude that plaintiffs are not foreclosed from seeking review of the earlier interlocutory orders.

3. *In Its Order Granting Summary Adjudication of Three Causes of Action the Trial Court Properly Held That SCIF Was Not Negligent or Deceitful and That There Was No Basis for Reformation of the Contract*

a. Introduction

According to plaintiffs, SCIF was negligent because it violated its duty to set a reasonably priced, refundable minimum premium, and deceitful because it represented to plaintiffs that the premium amount and its nonrefundability was lawful and required to be set at that minimum amount. Plaintiffs further alleged they were entitled to reformation of the policy. ■ Reformation may be had when there has been a negligent misrepresentation (*McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89 [127 Cal.Rptr. 275]), mutual mistake, or a mistake, suspected or known by the party opposing reformation, made by the party seeking reformation. (*Goodfellow v. Barritt* (1933) 130 Cal.App. 548, 556 [20 P.2d 740].)

As a matter of law, however, SCIF was neither negligent nor deceitful in connection with setting the premium here. Nor was there any misrepresentation or mistake such as is required for reformation. As we discuss below, these conclusions all flow from the fact that, by law, SCIF was *required* to charge a minimum premium, and was *allowed* to contract to make such minimum premium nonrefundable.

### b. The Minimum Rating Law

Division 2 of the Insurance Code sets out "Classes Of Insurance." One such class, set out in part 3 of division 2, is "Liability, Workers' Compensation, And Common Carrier Liability Insurance." Part 3 is divided into a number of chapters, of which chapters 2 (Workers' Compensation Policies), 3 (Regulation of Business of Workers' Compensation Policies) and 4 (The State Compensation Insurance Fund) are particularly relevant here.

At the time the policy here was issued, article 2 of chapter 3, "State Rate Supervision," contained the code sections that made up the "Minimum Rating Law" (these sections were subsequently repealed, effective January 1, 1995 (Stats. 1993, ch. 228, § 1, p. 1793)), while article 3 of chapter 4, "Policies," contained (and still contains) the other code sections particularly at issue in this appeal, sections 11840 and 11841.[7] ■ Under the Minimum Rating Law, the state's Insurance Commissioner was empowered to issue a classification of risks and premium rates for *all* workers' compensation insurers, both SCIF and other insurers, by which the *minimum* premium amount for classified risks was to be set by insurers so as to assure adequate reserves. (*P.W. Stephens, Inc. v. State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833, 1836 [27 Cal.Rptr.2d 107] (*P.W. Stephens*).) In fact, under the Minimum Rating Law, workers' compensation insurance carriers, including SCIF, were *forbidden* to issue insurance at rates *less* than those approved by the Insurance Commissioner. (*Homestead Supplies, Inc. v. Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 988 [147 Cal.Rptr. 22].)

---

[7] At all times relevant to this appeal, section 11840 provided:

"The insurance contracts or policies of the State Compensation Insurance Fund may be either limited or unlimited. The insurance contracts or policies may be issued for like periods as are allowed by law to other workers' compensation insurers or, in the form of stamps or tickets or otherwise, for one month, for any number of months less than one year, for one day, for any number of days less than one month or during the performance of any particular work, job or contract. The rates charged shall be proportionately greater for a shorter than for a longer period and a minimum premium charge shall be fixed in accordance with a reasonable rate for insuring one person for one day."

Section 11841 provides, in relevant part, "Nothing in this chapter shall prevent: (a) Any applicant for insurance from being covered temporarily until the application is finally acted upon. (b) An insured from surrendering any policy at any time and having returned to him the difference between the premium paid and the premium at the customary short term for the shorter period which such policy has already run."

Also relevant is section 481, subdivision (a), which provides:

"(a) *Unless the insurance contract otherwise provides*, a person insured is entitled to a return of premium if the policy is canceled, rejected, surrendered, or rescinded, as follows: (1) To the whole premium, if the insurer has not been exposed to any risk of loss. (2) Where the insurance is made for a definite period of time and the insured surrenders his policy, to such proportion of the premium as corresponds with the unexpired time, after deducting from the whole premium any claim for loss or damage under the policy which has previously accrued. The provisions of Section 482 apply only to the expired time." (Italics added.)

To assure that these minimum rates would result in adequate reserves, the Legislature authorized the creation of rating organizations to collect rating information and make rates, rate plans and rating systems. (§ 11730 et seq.) In 1992, SCIF's rating organization, the Workers' Compensation Insurance Rating Bureau, published the California Workers' Compensation Insurance Manual, which contained rating information as well as administrative rules relating to workers' compensation insurance coverage. (*P.W. Stephens, supra,* 21 Cal.App.4th at p. 1836.)

In addition to a minimum premium charged according to category or classification, insurers, including SCIF, were allowed to impose surcharges based on the hazard, risk, accident experience or insurance history of a particular insured. (*P. W. Stephens, supra,* 21 Cal.App.4th at pp. 1837–1838.)[8] Former section 11737.5 (which has been repealed along with the rest of the Minimum Rating Law) specifically required that such surcharges not be "unfairly discriminatory." In fact, the Insurance Commissioner is required to assure that rates, premiums and surcharges are all fair and reasonable (21 Cal.App.4th at pp. 1839–1840), because otherwise, since SCIF is required to accept any insured (except those who present a risk beyond the capabilities of the insurance fund, or those who do not adhere to occupational safety laws), it could evade this responsibility by setting excessive surcharges. (*Id.* at pp. 1839–1840.)

### c. SCIF Had the Right to Make the Minimum Premium Nonrefundable

Plaintiffs contend that SCIF could not make the minimum premium nonrefundable, citing section 11841. That section, however, simply provides that an insured is not precluded by "this chapter," from "surrendering any policy at any time and having returned to him the difference between the premium paid and the premium at the customary short term for the shorter period which such policy has already run." (§ 11841, subd. (b).)

At first blush, this section *might* seem to support plaintiffs' claim that SCIF cannot insist that the "unused" portion of a premium is nonrefundable. However, section 11841 merely states that nothing in chapter 4 *prevents* a portion of a premium from being refundable upon surrender of the policy.

---

[8] As the court put it, "[S]ection 11820 mandates that SCIF's rates 'be fixed with due regard to the physical hazards of each industry, occupation or employment.' SCIF reasonably argues that 'premium' may generally represent an incorporation of 'the rate, experience modification and any applicable surcharge.' We do not think it matters much whether experience modification is reflected solely in a 'premium rate' (§11823) or additionally in a 'surcharge.' The effect on the insured is the same *as long as the insured has a means to rectify unfairness or arbitrariness in either case.*" (Italics added.) (*P.W. Stephens, supra,* 21 Cal.App.4th at p. 1838.)

The notes to section 11841 (43 West's Ann. Ins. Code (1988 ed.) foll. § 11841, p. 492) cross-reference section 481, which sets out the *conditions* upon which a portion of a premium may be returned. Section 481, subdivision (a), applies to *all* insurance contracts and premiums, and provides, in relevant part: "(a) *Unless the insurance contract otherwise provides*, a person insured is entitled to a return of premium if the policy is canceled, rejected, surrendered, or rescinded, as follows. ..." (Italics added.)

■ In other words, when read together, sections 11841and 481 provide that nothing in the specific sections related to the State Compensation Insurance Fund prevents insureds from seeking a refund of premium, *but that the general rule is that an insurance policy may provide that no refund is available.* ■ Furthermore, no law *requires* SCIF, any more than any other insurer, to agree to a refund policy; indeed, SCIF is specifically authorized to "transact workers' compensation insurance required or authorized by law of this state to the same extent as any other insurer." (§ 11778.)

> d. Plaintiffs Failed to Create a Triable Issue of Material
> Fact that $1,365,000 Was Not the Proper Amount for
> the Minimum Premium

As we noted (see fn. 7, *ante*), plaintiffs are entitled to question the fairness or arbitrariness of a premium. In doing so here, they contend that the trial court erred by concluding that $1,365,000 was the proper agreed, nonrefundable minimum premium; plaintiffs had argued that the upper limit of such minimum was $6,500. Plaintiffs' calculation of the proper minimum amount was based on *their* construction of section 11840. (See fn. 8, *ante*.)

SCIF disputes this contention, and asserts that section 11840 was not applicable in 1992 because of the impact of the Minimum Rate Law and section 11820, the section specifically concerned with SCIF's authority to set rates. Section 11820 provides, in relevant part, that "*[s]ubject to the provisions of Article 2 (commencing with Section 11730) of Chapter 3*, the board of directors shall establish the rates to be charged by the State Compensation Insurance Fund for insurance issued by it. These rates shall be fixed with due regard to the physical hazards of each industry, occupation, or employment." (Italics added.)

Because SCIF's board of directors' authority to establish rates was "subject to the provisions of article 2 of chapter 3" in 1992, during the operation of the Minimum Rate Law, SCIF's board had *no* authority to set rates. Thus, in 1992, when the policy in question was issued, the Insurance Commissioner, not SCIF's board, set a "uniform" "classification of risks and premium rates" and "system of merit rating" for *all* workers' compensation carriers.

(§ 11732.) The ability of insurers to alter such premium or premium rate was extremely limited,[9] and, in fact, insurers were forbidden to *lower* the rates.[10] Put another way, SCIF was free to enter into an agreement containing a nonrefundable minimum premium, provided that such premium was not *less than* the minimum rate. That is what happened here.

Nothing in section 11840 provides otherwise. ■ The Minimum Rate Law did *not* address the issue of the *length* of the period or term of coverage, the subject covered by section 11840. Thus, there were no relevant Minimum Rate Law provisions to which section 11840 was subject, so SCIF was free to write policies by the day. Section 11840 provided that "insurance contracts or policies of the State Compensation Insurance Fund *may* ... be issued for ... for one month, for any number of months less than one year, for one day, for any number of days less than one month or during the performance of any particular work, job or contract." (§11840, italics added.) In other words, section 11840 did not *require* SCIF to issue a policy for any particular length, nor did any of the general provisions related to other workers' compensation insurance require SCIF or any workers' compensation insurer to issue a policy for any particular period.

As to plaintiffs' reliance on the provision that "a minimum premium charge shall be fixed in accordance with a reasonable rate for insuring one person for one day," there is no reason to think this provision means anything other than what it says—and what it says does not help plaintiffs. All this provision means is that the very smallest premium that may be charged must be based on the reasonable rate (as determined under the Minimum Rate Law, taking into account the risk factors) for one person for one day. The only limitation applicable to SCIF in 1992 was that such rate could not be *less than* the minimum rate.

---

[9] See, e.g., section 11732.2 ("No classification of risks and premium rates or system of merit rating shall permit a determination or modification of the premium or premium rate of a particular insured by reason of a combination of his California workmen's compensation insurance premium or experience with his premium or experience arising out of any other class of insurance, whether or not such other class of insurance is written under the laws of this State"); section 11732.3 ("No classification of risks and premium rates or system of merit rating shall permit a determination or modification of the premium or premium rate of a particular insured by reason of the combination of his or her California workers' compensation insurance premium or experience with his or her premiums or experience arising out of workers' compensation insurance written under the laws of any other jurisdiction.").

[10] See section 11736 ("An insurer shall not issue, renew or continue in force any workers' compensation insurance under a law of this state at premium rates which are less than the rates approved or issued by the commissioner. The effective date of such rates shall be the date fixed by the commissioner.").

### e. Conclusion

We cannot overemphasize the importance of the undisputed fact that SCIF made it clear that it would not accept the risk of providing the coverage requested by plaintiffs for less than the single minimum nonrefundable premium of $1,365,000. This premium reflected SCIF's analysis of among other things, the extent and character of the risk presented by the hazardous nature of plaintiff's business. This was all fully discussed with plaintiffs and they agreed to accept the terms required by SCIF. Neither SCIF nor the plaintiffs ever intended that coverage would be provided for any thing less. There was nothing unfair, unlawful or arbitrary about the terms of this agreement.

The law, *as it existed in 1992*, did not require that SCIF, or any other workers' compensation insurer, issue a policy that provided for a refund, nor did it have to issue a policy for any particular period of time; nor was there any limitation on the amount *above* the minimum rate. If SCIF was under no duty to issue a policy with the provisions now claimed by plaintiffs, then it cannot be liable for negligence for its failure to do so. As to deceit, the fact that SCIF asserted that the policy premium was specifically negotiated and agreed to as nonrefundable under all circumstances establishes the absence of deceit. The policy stated that the premium was nonrefundable, and the law allowed the policy to include this provision. Nothing in *P.W. Stephens, supra*, 21 Cal.App.4th 1833, requires a contrary conclusion. That case dealt with the imposition of surcharge premiums based on claims experience. This is quite different than an *agreement prior to policy issuance* as to the amount of the premium and the fact that it will be nonrefundable. There being no misrepresentation, nor mistake on the part of plaintiffs that the terms required by SCIF were lawful (because such terms were lawful), the trial court properly granted summary adjudication as to the first, third and fourth causes of action.

### 4. *The Trial Court Did Not Err by Awarding SCIF Its Attorney Fees*

Plaintiffs' only argument as to attorney fees is that if the summary adjudication order was improperly decided in favor of SCIF, then, upon reversal of that order, the fee order must be reversed as well. Because the summary adjudication order was proper, we do not reverse the fee order. No further discussion of the issue is required.

### DISPOSITION

The order of dismissal is modified to provide that the second cause of action is dismissed with prejudice, and that judgment in favor of SCIF and against plaintiffs is entered on the first, third and fourth causes of action. As so modified, the judgment is affirmed.

SCIF is awarded its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied July 28, 2003, and on July 9, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 24, 2003.