[No. B087933. Second Dist., Div. Two. Apr. 5, 1996.]

LANCE CAMPER MANUFACTURING CORPORATION, Plaintiff and Appellant, v.
REPUBLIC INDEMNITY COMPANY OF AMERICA, Defendant and Respondent.

196

## COUNSEL

Friedman & Phillips, Jerry S. Phillips and Jens B. Koepke for Plaintiff and Appellant.

Barry L. Kramer, Shernoff, Bidart & Darras and Michael J. Bidart as Amici Curiae on behalf of Plaintiff and Appellant.

Hancock, Rothert & Bunshoft, Ray L. Wong and Christopher B. Laukenmann for Defendant and Respondent.

Daniel E. Lungren, Attorney General, Timothy G. Laddish, Assistant Attorney General, Buchalter, Nemer, Fields & Younger, Roxani M. Gillespie, Richard de Saint Phalle, Marie G. Quashnock, Charles W. Savage and Barbara Gallios-Lee as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BOREN, P. J.**—In this appeal, we revisit two decisions in which we addressed an employer's right to sue its workers' compensation insurer. In the first decision, *Security Officers Service, Inc.* v. *State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887 [21 Cal.Rptr.2d 653], we upheld an employer's right to sue its workers' compensation insurer for breach of contract and bad faith. This decision has been followed and cited with approval by other courts. In the second decision, *P.W. Stephens, Inc.* v. *State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833 [27 Cal.Rptr.2d 107], we concluded that an employer who challenged its insurer's right to impose surcharges on its workers' compensation insurance premium had to exhaust its administrative remedy to resolve the dispute over ratesetting.

The trial court in the present case failed to distinguish between the holdings in *Security Officers* and *Stephens*. It concluded that an employer must pursue administrative review before suing its insurer for breach of the express and implied terms of the insurance contract. This was legally incorrect. There is no statutory or regulatory basis for administrative review when a breach of contract or bad faith claim is made by the insured. Accordingly, the court erred in dismissing the insured's complaint after granting the insurer's motion for judgment on the pleadings.

## ALLEGATIONS

In its second amended complaint, appellant Lance Camper Manufacturing Corporation (the Insured) asserts causes of action for breach of contract; breach of the implied covenant of good faith and fair dealing; unlawful, fraudulent and unfair business practices; and unjust enrichment.

The Insured purchased workers' compensation and employer's liability insurance from respondent Republic Indemnity Company of America (the Insurer) from 1986 to 1990. The policy provided that the Insurer would "pay promptly when due" all workers' compensation benefits, defend claims made against the Insured, and investigate and settle these claims.

During the policy period, the Insured alleges, the Insurer failed to (1) reasonably and in good faith evaluate the claims made against the Insured before setting its reserve amount; (2) conduct timely and competent claims investigations; (3) minimize the number of litigated claims; (4) provide adequate legal counsel to ensure a competent defense; (5) hire competent medical defense doctors; (6) adequately evaluate claims before entering settlements; (7) provide the Insured with experienced claims adjusters; (8) communicate with the Insured regarding the status of claims or provide an adequate defense to claims; and (9) avoid unnecessary delays in defending or otherwise closing out claims.

As a result of the multiple contractual breaches just listed, the Insured was compelled to pay higher premiums and was deprived of a dividend. Further, the Insurer acted in bad faith by failing to (1) evaluate adequately all claims prior to setting reserves; (2) monitor claims files conscientiously and adjust the reserves periodically; (3) communicate regularly with the Insured; (4) conduct meaningful claims reviews with the Insured; (5) show the Insured files regarding compensation claims against it for auditing purposes; (6) disclose its internal policies and procedures; (7) process claims fairly with a good faith regard toward their impact on the Insured's premium and dividends; and (8) hire competent counsel and medical experts to protect the Insured's interests.

The Insured alleges that the Insurer's refusal to make its claims files available to the Insured for auditing purposes was an unfair, unlawful and fraudulent business practice inasmuch as it prevented the Insured from knowing whether the Insurer properly calculated the premium and reserve and whether the Insurer was properly performing its contractual duties. The Insurer did so to inhibit the Insured from discovering the negligent and fraudulent handling of claims against the Insured and to enable the Insurer to collect exorbitant premiums.

Finally, the Insured alleges that the Insurer was unjustly enriched by its wrongful acts and that the Insured is entitled to recover the wrongful appropriations under a theory of quasi-contract.

DISCUSSION

## 1. Standard of Review

A motion for judgment on the pleadings is analogous to a general demurrer. (*Baker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285].) The task of this court is to determine whether the complaint states a cause of action. All facts alleged in the complaint are deemed admitted, and we give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 679, fn. 31 [209 Cal.Rptr. 682, 693 P.2d 261]; *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We are not concerned with a plaintiff's possible inability to prove the claims made in the complaint, the allegations of which are accepted as true and liberally construed with a view toward attaining substantial justice. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857]; *Parada* v. *City of Colton* (1994) 24 Cal.App.4th 356, 362 [29 Cal.Rptr.2d 309].)

The Insurer incorrectly contends that this court must give deference to "the trial court's factual inference[s]." On the contrary, "we are not bound by the determination of the trial court, but are required to render our independent judgment on whether a cause of action has been stated." (*Hoffman* v. *State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].)

## 2. Exhaustion of Administrative Remedies

The Insurer is joined by amici curiae Insurance Commissioner (the Commissioner) and State Compensation Insurance Fund (SCIF) in arguing

that all the Insured's claims are subject to administrative remedies and procedures. Accordingly, they reason, the Insured is not entitled to bring this civil action before having exhausted its administrative remedies.[1]

Despite their lengthy arguments, neither the Insurer nor its supporters offer a compelling reason why contract and bad faith claims such as those alleged here should be removed from their traditional venue in the court system. Nor is there any authority establishing that the Insured's claims are subject to administrative review.

■ "The requirement of exhaustion of administrative remedies is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its special jurisdiction. If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal. . . . [¶] [However,] [t]he mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an administrative remedy unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." (*Horsemen's Benevolent & Protective Assn.* v. *Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1552-1553 [6 Cal.Rptr.2d 698].)

■ When an administrative agency's function is regulatory in nature, an award of compensatory damages or punitive tort damages cannot be made by the agency without express or implied regulatory or statutory authority. (*Youst* v. *Longo* (1987) 43 Cal.3d 64, 82-83 [233 Cal.Rptr. 294, 729 P.2d 728, 85 A.L.R.4th 1025].) Nor can administrative authority to award contract damages be created by judicial fiat. (*Horsemen's Benevolent & Protective Assn.* v. *Valley Racing Assn., supra,* 4 Cal.App.4th at p. 1554.)

■ The Commissioner's supervisory and regulatory power over the insurance industry does not give him power to adjudicate all insurance disputes—such as this one, which involves an alleged breach of contract with a demand for monetary damages—unless persuasive legislative intent to grant this authority can be identified.

---

[1]The Commissioner's claim of jurisdictional authority is of very recent vintage. The Department of Insurance has consistently denied for several years that there is any administrative remedy for the Insured or for other employers (such as amici curiae on behalf of the Insured) asserting claims similar to those made by the Insured. Formal administrative claims made to the Department of Insurance by the Insured and amici curiae have been uniformly rejected on the grounds that there is no administrative remedy available. The Commissioner does not acknowledge his repudiation of his erstwhile jurisdictional disclaimers, nor does he explain the reasoning behind his change of heart.

No legislative intent to have the Department of Insurance or other regulatory agency adjudicate breach of insurance contract cases can be divined from the briefs of the Insurer or its supporters. Nor do the Insurer and its supporters reveal any authority giving the Commissioner power to make a monetary award to redress past misconduct by a workers' compensation insurer. Finally, the Insurer and amici curiae fail to identify any existing administrative process for reviewing the type of claim the Insured makes here.

The Insurer and its supporters cite many statutes.[2] Without rehearsing them in detail, suffice it to say that we have examined all the cited authorities but remain unconvinced that these authorities—explicitly or implicitly, individually or collectively—allow administrative review in this case.

Some examples of the flawed reasoning applied by the Insurer and amici curiae illustrate our point. To wit: the Insurer and SCIF argue that the Insured's case is foreclosed by the Commissioner's administrative power to investigate and punish insurers who knowingly commit unfair claims settlement practices "with such frequency as to indicate a general business practice." (Ins. Code, §§ 790.03, subd. (h), 790.08.) An insurer who regularly engages in unfair practices may have to pay a penalty to the state government. (Ins. Code, § 790.035.) The Supreme Court acknowledged in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] that private civil actions against insurers are not foreclosed by the Commissioner's powers under section 790.03. The court wrote, "[A]part from administrative remedies [under section 790.03], the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing." (46 Cal.3d at pp. 304-305.)

In addition, the Insurer and the Commissioner cite numerous statutes relating to the Commissioner's general regulatory power over workers' compensation rating systems and reserving practices. (Ins. Code, §§ 11556-11557, 11735-11737.) These statutes are largely concerned with the overall manner of ratesetting, and address issues of uniformity, discrimination and solvency in the workers' compensation insurance industry; none of these authorities suggest that the Commissioner has some way to award damages

---

[2]Among the statutes they cite are Insurance Code sections 730, 733, 790.03, 790.04, 790.05, 908, 923.5, 1065.1, 1851-1860.3, 11556, 11557, 11558, 11730-11737, 11750-11759.1 and 11822. Also cited are Labor Code sections 124, 129, 129.5, 133, 3202, 3761, 3762, 5005, 5300, 5301, 5810, 5813, 5814, 5900 and 5950.

incurred by an insured when its insurer breaches its insurance contract by hiring incompetent doctors and lawyers or delaying claim resolutions or failing to make a reasonable investigation of claims or refusing to communicate regularly with its insured to assess pending claims, for example.

This court had occasion to consider the viability of contractual and bad faith claims against a workers' compensation insurer in *Security Officers Service, Inc.* v. *State Compensation Ins. Fund, supra*, 17 Cal.App.4th 887. In the *Security Officers* case, as here, the insured made overlapping claims of breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that the insurer's failure to promptly and fairly resolve workers' compensation claims made against the insured, or diligently defend the insured, caused the insured's premiums to rise to unwarranted levels, increased the insured's reserve level, and deprived the insured of a dividend. (*Id.* at p. 891.) Similarly, the insured in *Security Officers* asserted a cause of action for "fraudulent claims practice," alleging that the insurer delayed in resolving claims against the insured for years, thereby inflating the insured's reserve requirements, then wrongfully refused to cooperate with the insured's request for a claims audit when the insured discovered the insurer's improprieties in handling outstanding claims. (*Id.* at p. 892.)

We determined in the *Security Officers* case that the trial court improperly dismissed the insured's action after sustaining demurrers without leave to amend. (17 Cal.App.4th at p. 890.)

In regard to the insured's express and implied contract claims, we concluded in *Security Officers* that these survived demurrer. First, the insurer's alleged "pattern of failing to pay claims promptly, defend them diligently, or assign them reasonable reserves, followed by improperly failing to pay plaintiff dividends" (17 Cal.App.4th at p. 893) could amount to a breach of the policy's express terms. The insurance policy in the *Security Officers* case specifically required the insurer to "pay promptly when due to those eligible under this policy the benefits required of [plaintiff] by the workers' compensation law." (*Id.* at p. 893.) The policy in the case at bar similarly states the "[The Insurer] will pay promptly when due the benefits required of [the Insured] by the workers compensation law." Here, as in *Security Officers*, allegations of undue delay in resolving claims may signify a violation of the "prompt payment" obligation specified in the insurance contract. (*Id.* at p. 894.)

Second, the alleged mishandling of claims by an insurer occasioned by the hiring of inadequate legal and medical advisers and insufficient defense

investigation and resolution of pending claims implicates the insurance policy's implied covenant of good faith and fair dealing, which "imposes limits on the insurer's latitude in discharging its contractual right or duty to defend, investigate and settle claims." (17 Cal.App.4th at p. 895.) In fact, the implied covenant in a workers' compensation insurance policy obligates an insurer "to conduct its functions of defending, investigating, reserving, and settling claims with good faith regard for their effect upon plaintiff's premiums, as determined under the policy and governing regulations." (*Id.* at p. 898.) It is precisely this obligation which the Insured in this instance alleges was breached by the Insurer's conduct.

An opinion issued by Division One of this district describes allegations that are virtually identical to those alleged in the case before us relating to the breach of express and implied contractual terms in a workers' compensation insurance policy. (*Tricor California, Inc.* v. *State Compensation Ins. Fund* (1994) 30 Cal.App.4th 230 [35 Cal.Rptr.2d 550].) As here, the insured in *Tricor* alleged a failure to reasonably evaluate claims prior to setting reserves, inadequate monitoring of claims by the insurer, failure to minimize claims, failure to communicate with the insured, hiring of inadequate and incompetent legal and medical counsel, unnecessary delays in closing claims, and so on. This was done with the intent to charge higher premiums and deprive the insured of a dividend. (*Id.* at pp. 234-235.) Citing the *Security Officers* case, our colleagues found the insured's claims were improperly dismissed by the trial court. (*Id.* at pp. 239-240.)

The decision relied upon by the Insurer and the trial court, *P.W. Stephens, Inc.* v. *State Compensation Ins. Fund, supra,* 21 Cal.App.4th 1833, is inapposite. The narrow question before this court in *Stephens* was whether the SCIF was permitted by statute or regulation to impose a surcharge on its premiums and whether arbitrary, exorbitant, discriminatory or unfair surcharges were subject to administrative review. *Stephens* did not purport to address an insured's right to sue civilly for an insurer's breach of express and implied contractual provisions obligating an insurer to promptly and fairly handle claims made against its insured. The exhaustion of remedies discussion in *Stephens* simply has no relevance here, because "[t]his is not a rate setting dispute, but rather a claim that [the Insurer] engaged in bad faith in settling individual policy claims to artificially inflate its reserves and [the Insured's] premiums, and deflate [the Insured's] dividends." (*Tricor California, Inc.* v. *State Compensation Ins. Fund, supra,* 30 Cal.App.4th at p. 242. See also *State Compensation Ins. Fund* v. *Brown* (1995) 32 Cal.App.4th 188,

199 [38 Cal.Rptr.2d 98], recognizing that *Stephens* applies solely to rate setting disputes.)[3]

The appeal before us is factually indistinguishable from the *Security Officers* and *Tricor* cases. Those holdings control here, and mandate that the dismissal of the Insured's complaint be reversed. The Insured is not challenging the rates and reserves as being unfair and unreasonable and contrary to administrative regulations, as the plaintiff did in *Stephens*. Rather, it is challenging the claims handling practices that increased the Insurer's reported losses, which resulted in higher premiums, higher reserves, and lower dividends. The Insured's claim is not one that is subject to administrative review.

As to the Insured's cause of action denominated "unfair, unlawful and fraudulent business practices," this claim does not provide a separate basis for liability but rather is subsumed by the Insured's cause of action for breach of the implied covenant of good faith and fair dealing. (*Security Officers Service, Inc.* v. *State Compensation Ins. Fund, supra,* 17 Cal.App.4th at p. 899.)

█ Finally, as to the Insured's claim of unjust enrichment resulting in an implied-in-fact contract, it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter. (*Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 613 [119 Cal.Rptr. 646]; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 855 [268 Cal.Rptr. 550].) Here, the Insured has alleged the existence and validity of an enforceable written contract between the parties in its first two causes of action. The Insured then realleges the existence of the written contract in its claim of a quasi-contract. This is internally inconsistent. The Insured must allege that the express contract is void or was rescinded in order to proceed with its quasi-contract claim. (*Lloyd* v. *Williams* (1964) 227 Cal.App.2d 646, 649 [38 Cal.Rptr. 849].) It seems unlikely that the Insured would want to avoid the contract or claim a rescission, inasmuch as this would require the Insured to return the benefits it received under the contract. (*Ibid.*)

---

[3]The Insurer misstates our holding in *Security Officers* when it asserts that the opinion fails to address the issue of exhaustion of administrative remedies. In fact, we suggested that the administrative remedy, if it applied at all, would relate to a claim for ordinary negligence, because the administrative agency could correct premiums that are merely erroneous. (17 Cal.App.4th at p. 899, citing Ins. Code § 11753.1.) By contrast, the claim here is that that the Insurer willfully failed to evaluate or handle claims in a fair or prompt manner, leading to premiums that were not merely erroneous but rather were deliberately and exorbitantly inflated by the Insurer's wrongful conduct.

## CONCLUSION

 The result urged by the Insurer and its supporters may be cost effective for the insurance industry. Nevertheless, we cannot judicially create out of thin air an administrative remedy not contemplated by the Legislature for bad faith conduct in breach of a workers' compensation insurance contract. Respondent and amici curiae must first convince the Legislature to enact a law creating an administrative remedy before we can require a plaintiff to pursue it.

## DISPOSITION

The judgment (order of dismissal) is reversed. Appellant is entitled to recover its costs on appeal from respondent.

Fukuto, J., and Zebrowski, J., concurred.

A petition for a rehearing was denied April 25, 1996, and respondent's petition for review by the Supreme Court was denied July 24, 1996.