Filed 5/31/24  Maraziti v. Wilmington Trust, Nat. Assn. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GABRIELA MARAZITI, as Successor Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILMINGTON TRUST, NATIONAL ASSOCIATION,<br><br>    Defendant and Respondent. | D081629<br><br><br><br>(Super. Ct. No. 37-2017-00006282-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed and remanded.

Webb & Carey and Kevin Alan Carey for Plaintiff and Appellant.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Respondent.

## I.    INTRODUCTION

This appeal arises from foreclosure proceedings initiated by Wilmington Trust, National Association (Wilmington) on a residential property (the Property) deeded, at the time, to The Maraziti Family Trust (the Trust).  Wilmington recorded a notice of default and election to sell the

Property in late 2016.  In early 2017, Jaclyn Preciado, acting as trustee of the Trust, filed a complaint against Wilmington seeking quiet title, among other causes of action.

In January 2020, Wilmington filed a motion for judgment on the pleadings in which it asserted the grant deed conveying title to the Trust (the Grant Deed) was void because it conveyed title to the Trust itself and not to Preciado as trustee.  Preciado quickly obtained a judgment reforming the Grant Deed to name herself, as trustee of the Trust, as the grantee, and the trial court denied Wilmington's motion.  Shortly thereafter, Gabriela Maraziti substituted in as the successor trustee and filed a supplemental complaint adding factual allegations regarding the reformation.  Wilmington filed a second motion for judgment on the pleadings, in which it argued the new allegations did not relate back to the original complaint and all causes of action were barred by the statute of limitations.  The trial court granted the motion and entered a judgment of dismissal.

Maraziti filed a motion for reconsideration and a new trial, which the trial court denied, and she now appeals from both the judgment of dismissal and the ruling denying her subsequent motions.  She asserts the trial court erred by concluding that the supplemental complaint did not relate back to the original complaint and that the statute of limitations barred her claims.  Because we agree that the supplemental complaint relates back to the original complaint for the purpose of the statutes of limitations, we find that the trial court erred in concluding that Maraziti's claims are time-barred.  Accordingly, we reverse.

2

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prior Ownership and Acquisition of Loans*

The previous owners, Rodolfo De La Rosa and his wife Amparo Haldos Turnauckas (collectively, the De La Rosas) purchased the Property in 2003 for $392,000. The De La Rosas took out a loan from Accredited Home Lenders, Inc. to purchase the Property, and then leased the Property to their real estate broker, Cynthia Geniza, who agreed to cover the monthly payments on the loan. In 2006, while living on the Property and allegedly without the De La Rosas's knowledge or consent, Geniza changed the mailing address for loan-related document to the Property address. She then refinanced twice, resulting in two new loans from Sierra Pacific Mortgage Inc. (Sierra Pacific) secured by the Property, in the respective amounts of $417,000 and $200,000.[1]

The De La Rosas claim they first discovered the fraud in 2009, when Sierra Pacific recorded a notice of default against the Property. The De La Rosas filed for bankruptcy that September, and filed a complaint against Sierra Pacific and several other related parties in the superior court a few months later.

In a declaration filed in the superior court action, Rodolfo De La Rosa averred that he and his wife did not receive any proceeds from the two loans held by Sierra Pacific. He said Geniza admitted she obtained the loans through fraudulent means and used the proceeds to purchase additional

---

[1] Wilmington contends there is evidence the De La Rosas were aware of and consented to this scheme. Because this appeal arises from a judgment on the pleadings, we accept the facts as alleged in the complaint as true. (See *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 (*Lance Camper*).)

3

properties, which she intended to "flip." She was not successful, though, and "had no money." Geniza likewise admitted, during a sworn deposition, that she forged the De La Rosas' signatures to fraudulently secure the two refinance loans.

The superior court granted a preliminary injunction enjoining the sale of the Property in September 2010, but later dismissed the action because the claims had not been released by the bankruptcy trustee. The bankruptcy trustee abandoned any interest in the Property in May 2012. The report of abandonment listed the fair market value of the Property as $330,000 and the related debt as $657,864. The bankruptcy was terminated a year later, in May 2013.

B.    *Transfers to the Trust and Wilmington*

In March 2014, the De La Rosas executed the Grant Deed, transferring title to the Property to "The Maraziti Family Trust," "[s]ubject to existing taxes, assessments, liens, [and] encumbrances," "for and in consideration of One Dollar ($1.00) and other good and valuable consideration." Richard Maraziti, the sole and only settlor of the Trust, prepared the Grant Deed. Richard had designated his oldest daughter, Preciado, as the sole trustee of the Trust and she was serving in that role when the Grant Deed was executed. Around the same time, Sierra Pacific assigned its interest in the underlying deed of trust to Wilmington, as successor indenture trustee to Citibank, N.A.

C.    *Notice of Default and Subsequent Litigation*

On November 17, 2016, Wilmington recorded a notice of default and election to sell the Property. In January 2017, counsel for the Trust sent a letter to counsel for Wilmington. He said he represented the Trust, the successor-in-interest to the De La Rosas (the purported borrowers), and

4

asserted the underlying promissory note and deed of trust were invalid and void, "having been fraudulently procured by a third party without the knowledge or consent of the [p]urported [b]orrowers." He noted that the superior court had granted a preliminary injunction enjoining the 2009 foreclosure proceedings, and that the Trust now had standing to claim wrongful foreclosure based on the void note and deed of trust. The letter did not mention Preciado as trustee.

On February 21, 2017, Preciado filed a complaint, in her capacity as trustee of the Trust, against Wilmington and several other related parties for wrongful foreclosure, cancellation of instrument pursuant to Civil Code section 3412, quiet title, declaratory relief, and recission against Wilmington (the Wrongful Foreclosure Action). In the complaint, Preciado acknowledged that Wilmington had recorded the notice of default and election to sell, but asserted the underlying notes were fraudulently procured and the underlying trust deed was invalid as a matter of law.

A few weeks later, Preciado filed an ex parte application for a temporary restraining order and a motion for preliminary injunction. In both, Preciado alleged she had standing as the successor-in-interest to the De La Rosas with respect to all legal and equitable rights pertaining to the Property. In its opposition, Wilmington asserted Preciado's claims were barred by res judicata, based on the prior litigation, and the statute of limitations. Wilmington did not assert that the Grant Deed was a nullity or that Preciado did not have standing.

On September 15, 2017, the trial court, the honorable Eddie C. Sturgeon presiding, granted Preciado's motion for a preliminary injunction, precluding Wilmington from foreclosing on the Property during the pendency of the litigation.

5

D.    *Wilmington's First Motion for Judgment on the Pleadings and the Resulting Reformation of the Grant Deed*

It is unclear from the record on appeal what happened in the case over the next two years.  On January 13, 2020, Wilmington filed a motion for judgment on the pleadings.  Wilmington asserted Preciado could not pursue the asserted claims because the underlying Grant Deed was a legal nullity that granted title to the Trust—a collection of assets incapable of holding title—and not a trustee.  The hearing for the motion was originally set for February 7, 2020.

Wilmington submitted a declaration from its attorney along with the motion, stating that he communicated with Preciado's attorney regarding the basis for the motion for judgment on the pleadings in October 2019 but the parties were unable to reach a resolution.  Around that same time, on October 17, 2019, each of the De La Rosas executed a declaration stating they intended to transfer ownership of the Property to the trustee of the Trust on March 6, 2014.

On January 17, 2020, Preciado filed a petition for reformation of the Grant Deed under a separate case number (the Reformation Action).  The named respondents were Richard Maraziti, the Trust, and Does 1 to 10.  Wilmington was not named in the petition, or otherwise notified of the proceedings.  On January 31, 2020, Preciado, Richard Maraziti, and the Trust filed a joint stipulation for entry of judgment in the Reformation Action.  They stipulated that Richard Maraziti was the scrivener of the Grant Deed and that he inadvertently listed the Trust, as opposed to Preciado as trustee of the Trust, as the grantee.  They also attached a separate scrivener's affidavit from Richard attesting to the error.

Preciado also submitted the declarations from the De La Rosas and the scrivener's affidavit from Richard Maraziti in opposition to Wilmington's

6

motion for judgment on the pleadings in the Wrongful Foreclosure Action. Preciado asserted that, even if legally void, the Grant Deed could be reformed and requested leave to amend the original complaint "to add a cause of action seeking a judicial reformation of said Grant Deed." She did not mention that she had filed the separate reformation petition.

On February 5, 2020, the trial court in the Reformation Action, the honorable John S. Meyer presiding, issued a stipulated judgment of reformation. The judgment stated the Grant Deed "is reformed so as to correctly state the name of Grantee on the face of said instrument thereon to be 'Jaclyn Preciado, Trustee of The Maraziti Family Trust.'"

Just two days later, and apparently unaware of the judgment in the Reformation Action, Judge Sturgeon issued a tentative ruling granting Wilmington's motion for judgment on the pleadings in the Wrongful Foreclosure Action. In the tentative, the court denied Preciado's request to take judicial notice of the De La Rosa declarations and a new, subsequently executed grant deed, and stated, "[a]t this time, the deed upon which plaintiff holds title [h]as been challenged as void and there is no pending case or amendment to reform the deed." The court concluded, "[Wilmington's] motion for judgment on the pleadings is granted because the deed is void and [Preciado] is a stranger to title. In light [sic] [Preciado] paid $1.00 for the property and has had control of the property for over three years, defendant would be prejudiced by allowing leave to amend at this time."

At the hearing that same day, counsel for Preciado alerted the court (and Wilmington) for the first time to the existence of the recently acquired judgment of reformation. Wilmington asserted it was a necessary party and should have been named in the reformation action. The court noted that it had previously thought its decision on the motion for judgment on the

7

pleadings was "straightforward" but that the reformation judgment was "a concern for the court," and took the matter under submission.

Judge Sturgeon set the matter for additional briefing, but the proceedings were delayed due to the Covid-19 pandemic. On September 11, 2020, Judge Sturgeon issued a tentative ruling denying Wilmington's motion for judgment on the pleadings. The court noted the judgment of reformation and stated "[t]here was no appeal, nor a request to intervene or set aside the judgment. Accordingly, the judgment is final and binding on the two parties, the grantee and the grantors. [¶] The court declined to consider the reformed deed void." That same day, the court continued the motion hearing to January 22, 2021.

Wilmington then filed a motion to intervene and vacate the judgment in the Reformation Action. Wilmington asserted the trial court could not issue a judgment reforming the Grant Deed nunc pro tunc in Wilmington's absence. Wilmington argued that Preciado had to choose; she could have a judgment that could not be used nunc pro tunc against Wilmington, or she could "attempt to obtain a nunc pro tunc judgment fairly and honestly to establish standing to challenge Wilmington's lien" by naming Wilmington in the action.

On January 22, 2021, Judge Meyer denied Wilmington's motion to intervene in the Reformation Action. The court explained that the reformation of the Grant Deed did not affect Wilmington's security interest as a lienholder and thus Wilmington was not a necessary party. The court did not address whether the judgment of reformation was nunc pro tunc. Wilmington did not appeal that ruling.

On March 5, 2021, Judge Sturgeon denied Wilmington's motion for judgment on the pleadings in the Wrongful Foreclosure Action. The court

8

noted that the judgment in the Reformation Action was final and declined to consider the reformed deed void.

E. *Substitution of Gabriela Maraziti as Successor Trustee and Motion to File a Supplemental Amended Complaint*

In May 2022, Richard Maraziti executed a declaration stating that Preciado had resigned as trustee of the Trust, and that he had designated his younger daughter, Gabriela Maraziti, as the successor trustee. In June, Preciado filed an ex parte application seeking to substitute Maraziti as the plaintiff, to shorten time to amend the complaint, and to clarify a previous order on the 5-year dismissal statute. The trial court granted the request to substitute Maraziti as the plaintiff and set a hearing on the other motions.

In advance of the hearing, Maraziti filed a memorandum of points and authorities in support of her motion to file and serve a "supplemental first amended complaint." Maraziti stated that she was seeking to add material facts which arose "subsequent to the filing of the original Complaint on 02/21/2017." The proposed additions included facts regarding the reformation of the Grant Deed, an allegation that the reformed deed was retroactive back to the original date of recording the original Grant Deed, and facts related to the alleged tolling of the statute of limitations.

Wilmington opposed the motion and asserted that the proposed additions constituted a supplemental complaint, and not an amended complaint, because they were based on events occurring after the filing of the original complaint. The trial court agreed and granted the motion in part, specifying that the new complaint was supplemental, and precluding Maraziti from including the words "first amended."

9

F.      *Wilmington's Second Motion for Judgment on the Pleadings*

Maraziti filed the first supplemental complaint in August 2022. Soon thereafter, Wilmington filed a motion for judgment on the pleadings as to the supplemental complaint.

Wilmington asserted Maraziti (now standing in the shoes of Preciado) had notice of the claims when she filed the original complaint in February 2017, that the supplemental complaint did not relate back to the original complaint, and that the claims in the supplemental complaint were barred by the applicable three-year statute of limitations.

In response, Maraziti asserted the reformation of the Grant Deed was retroactive back to its original execution in March 2014, such that she did effectively have standing under the original complaint, and that the supplement complaint did not include any new or unrelated causes of action. Maraziti asserted further that the limitations period had not commenced in any event because the Trust had been in continuous, undisturbed possession of the property since the original execution of the Grant Deed.

In its reply, Wilmington clarified its position and explained, regardless of the retroactivity of the reformation of the Grant Deed, the facts remained that: "(1) [Maraziti] did not have a cause of action when this case was filed in February of 2017, and (2) [Maraziti did] not assert[ ] the causes of action she *does* have until August of 2022, more than five years after the claims were definitely known about." (Underscoring omitted.)

After hearing argument from the parties, the trial court granted Wilmington's motion. In doing so, the court made two significant findings: (1) the limitations period began running on February 21, 2017 when Preciado filed the original complaint; and (2) the supplemental complaint did not relate back to the original. Thus, the court concluded that the supplemental

10

complaint was filed more than five years after the limitations period began, beyond any applicable statutory period.

Maraziti filed a motion for reconsideration shortly after the court's ruling, and filed a motion for a new trial a couple of months later. Maraziti argued that Wilmington raised its assertion that the statute of limitations began to run with the filing of the original complaint for the first time in its reply brief, that she did not have an adequate opportunity to respond, and that the trial court made an error of law when it concluded that the limitations period began when Preciado filed the original complaint.

The trial court denied both motions. Maraziti now appeals from the judgment of dismissal and the denial of her motions for reconsideration and a new trial.

### III. DISCUSSION

Maraziti asserts the trial court erred by concluding: (1) the limitations period began to run prior to the filing of the supplemental complaint; (2) the new complaint was supplemental only, and not amended; and (3) the new complaint did not relate back to the original complaint. She also contends that Wilmington has no right to any relief because the underlying deed of trust was never properly assigned to Wilmington, and that the wrongful foreclosure cause of action could not have accrued absent a foreclosure sale. Finally, she contends the trial court also erred in denying her motions for reconsideration and a new trial, apparently for essentially the same reasons.

A. *Standard of Review and Burden on Appeal*

A motion for judgment on the pleadings is similar to a demurrer in that it " 'attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed.' " (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064.) It is appropriate to grant such a motion in favor of

11

the defendant when the complaint shows "on its face [it] is barred by the statute of limitations." (*Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 440; see *SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 316). The trial court's task in reviewing the motion is to determine whether the complaint states a viable cause of action assuming the facts alleged in the complaint are true. (*Lance Camper, supra*, 44 Cal.App.4th 194, 198.)

On appeal, we review the court's ruling on a motion for judgment on the pleadings de novo. (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 685.) We likewise apply our independent judgment to review a motion for new trial following the grant of a motion for judgment on the pleadings, which necessarily presents a question of law. (*Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 708.)

Notwithstanding the de novo standard of review, it remains the appellant's burden to affirmatively establish reversable error. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.) As the party asserting such error, Maraziti "must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"]; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court disregards argument for which no authority is furnished].)

12

B.    *The Trial Court Did Not Err by Concluding the Original Complaint Triggered the Limitations Period*

We begin with the trial court's findings that the applicable limitations period began to run with the filing of the original complaint in February 2017, and that the first supplemental complaint was filed more than five years later, in August 2022, beyond any applicable statute of limitation. Both the original complaint and the first supplemental complaint assert causes of action for wrongful foreclosure, cancellation of instrument pursuant to Civil Code section 3412, quiet title, declaratory relief, and recission by fraud.

Maraziti does not dispute that five years is the longest applicable statute of limitations, with one exception—she asserts there is no statute of limitations for cancellation of a void deed or quiet title based on fraud. Setting that argument aside for a moment, Maraziti's primary assertion is that the limitations period never began because she always remained in undisturbed possession of the Property. She relies primarily on *Salazar v. Thomas* (2015) 236 Cal.App.4th 467 (*Salazar*) and *Huang v. Wells Fargo Bank, N.A.* (2020) 48 Cal.App.5th 431 (*Huang*) to support this claim, but neither case is directly applicable to the facts of this case or the trial court's ruling.

In *Salazar*, the court acknowledged the general rule, subject to various exceptions, that the limitations period ordinarily begins to run "from the occurrence of the last element essential to the cause of action," at which point the "cause of action 'accrues.' " (*Salazar, supra,* 236 Cal.App.4th at p. 477, fn. 10.) But the court explained further, special rules apply when determining the limitations period for claims to quiet title. (*Id*. at p. 477.) Specifically, as relevant here, the limitations period typically does *not* run against one in possession of land. (*Ibid*.) The rationale being that courts are generally "unwilling[ ] to convert a statute of limitations into a statute that works a

13

forfeiture of property rights on the person holding the most obvious and important property right—namely, possession." (*Ibid.*)

However, the rule is not absolute. (*Salazar, supra,* 236 Cal.App.4th at p. 477.) For the exception to apply, the possession must be exclusive, undisputed, and undisturbed. (*Ibid.*) In other words, mere notice of an adverse claim is not sufficient to start the running of the limitations period, but when another takes action to press or assert an adverse claim, at some point, the possession is no longer undisturbed and the limitations period does begin to run. (*Salazar,* at p. 478.) This makes sense as finality is important when considering claims to title or property. Applying these general principles, the court in *Salazar* concluded that the recording of a notice of default was not sufficient, on its own, to trigger the running of the limitations period, but suggested that a notice of tax or trustee's sale might be sufficient. (*Id.* at pp. 478–482.)

The court in *Huang* took the analysis one step further and, relying on *Salazar*, concluded a recorded notice of trustee sale also was not sufficient to start the running of the limitations period. (*Huang, supra,* 48 Cal.App.5th at pp. 434, 438.) In both cases, the notices indicated the property might be sold, unless the homeowner took certain steps to resolve the matter, and in both cases the relevant parties did take steps to prevent the sale. (*Id.* at p. 439.) As the court in *Huang* explained, "Even when a party in possession knows there is a potential adverse claim, 'there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him.'" (*Id.* at p. 438.) Thus, the court concluded that because neither notice called into question the homeowner's right to stay in possession of the property, at least for the time being, neither adequately disturbed possession for the purposes of beginning the limitations period. (*Ibid.*)

14

However, in both *Salazar* and *Huang*, the court was considering the original complaint, and the only issue before the courts was whether the claims were barred by the limitations period based on the relevant notices of default or sale.  Neither court expressly considered whether the filing of such a lawsuit itself, or the defendant's assertion of adverse claims in response, triggered the running of the limitations period.

As the trial court here explained, "The policy of not requiring a party in possession of property to go to the 'expense and inconvenience of litigation' is not served on these facts because [Preciado and Maraziti] took it upon themselves to go to the expense and inconvenience of litigation.  Accordingly, the latest the statutes of limitation began running on [Maraziti's] claims was February 21, 2017 when [Preciado] filed the[ original] complaint."  (See *Salazar, supra,* 236 Cal.App.4th at p. 478; *Huang, supra,* 48 Cal.App.5th at p. 438.)

By focusing on Wilmington's alleged failure to adequately disrupt her possession through a notice of sale, Maraziti fails to directly address the trial court's holding that *her* initiation of the litigation concerning the title to the Property caused the limitations period to begin to run.  Maraziti presents no argument or authority to dispute that conclusion, or to otherwise establish that the filing of the original complaint did not begin the running of the limitations period.  In the absence of such argument or authority, we find no error in the trial court's reasoning.  As the trial court pointed out, once Preciado filed the original complaint, both her and Wilmington's claims to title of the Property were affirmatively in dispute.  (See, e.g., *Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326 (*Wilde*) [" 'In a quiet title action the plaintiff must prove his title in order to recover' "].)

15

Although she does not dispute the trial court's general conclusion that the limitations period begins running with the filing of a complaint, Maraziti does assert that the limitations period could not have begun in this case, despite the filing of the original complaint, because, according to Wilmington, she did not have standing to pursue her claims in the first instance. Again, though, Maraziti presents no legal authority suggesting that lack of standing precludes the limitations period from running, or put another way, that the limitations period does not begin simply because one has not perfected their claim. Rather, the cases she relies upon address what a party most prove in order to *recover* on a claim. (See, e.g., *Wilde, supra,* 139 Cal.App.4th 321, 326 [concluding the plaintiffs did not prove their claim for adverse possession at trial].) But the statutes of limitation are not based on one's ability to recover.

Here, there is no dispute that Preciado *asserted* claims, including those for quiet title and cancellation of instrument, against Wilmington and, in doing so, alleged that she held title to the Property; it does not matter whether she ultimately could have prevailed on those claims, or whether she could have prevailed at the exact moment that she filed the complaint. As subsequent events have demonstrated, Preciado had the ability all along to rectify her own lack of standing by reforming the Grant Deed. Moreover, she either believed she held title when she filed the complaint, based on the intent of the parties in executing the Grant Deed, or knew of the scrivener's error. Were we to conclude, as Maraziti suggests, that the limitations period did not begin to run until Preciado obtained the reformation judgment, a matter which Wilmington correctly asserts was entirely within her control, similarly situated parties could cause similar delays by intentionally introducing and then declining to correct errors to their own title. We decline to set such a precedent under these facts.

16

Maraziti also asserts that her or Preciado's knowledge of the alleged forgeries to obtain the loans underlying Wilmington's deed of trust was not sufficient to start the running of the limitations period. But the trial court never made such a finding. As we have explained, the trial court concluded the statute of limitations began to run when Preciado filed the original complaint, affirmatively putting the issues of title before the court. Preciado or Maraziti's knowledge of the alleged forgeries is beside the point.

Finally, as noted, Maraziti asserts there is no statute of limitations for cancellation of a void deed or quiet title based on fraud, and that an action to cancel a void instrument can be brought at any time. She relies on Civil Code section 3412[2] and *Hironymous v. Hiatt* (1921) 52 Cal.App. 727 as support. But *Hiatt* did not address a statute of limitations for a void deed. The court in *Hiatt* considered whether a promissory note executed in favor of certain trustees in trust for a minor without any consideration was enforceable. (*Id.* at p. 730.) The court found that the note could be voided by the donor at any time, and, in that context, concluded there was no applicable statute of limitations. (*Id.* at p. 736–737.)

More recently, the court in *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319 found that *Hiatt*'s holding that " 'an action to cancel a wholly void instrument can be brought at any time,' " was both without merit and "especially inappropriate" when applied to a claim involving title to real property. (*Robertson* at pp. 1324, 1327.) In reaching that conclusion, the

---

2      Civil Code section 3412 states: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

court explained, "Civil Code section 3412 is not a statute of limitations, nor does it contain one within it." (*Robertson,* at p. 1325.) Maraziti does not acknowledge or address the holding in *Robertson*. We are not persuaded that there is no statute of limitations in this context.

C.    *The Trial Court Did Not Err in Concluding the New Complaint Was Supplemental, Not Amended*

Maraziti next asserts that, even if the limitations period did begin with the filing of the original complaint, the trial court erred by refusing to allow her to file an amended complaint to cure her lack of standing. We disagree.

"Matters which occur after the filing of a complaint may not be alleged by amendment to the complaint, but must be brought into the action by means of a supplemental complaint." (*Hebert v. Los Angeles Raiders, Ltd.* (1991) 23 Cal.App.4th 414, 426; Code Civ. Proc., § 464.) In other words, a " 'supplemental' pleading is used to allege facts occurring *after* the original pleading was filed," while "the additional allegations in an 'amended' pleading address matters that had occurred before the original pleading was filed." (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1032.) "As a general rule, where an original pleading is filed before the cause of action has arisen, that defect cannot be cured by a supplemental complaint addressing matters that occurred after the original pleading was filed." (*Ibid.*) Here, the trial court determined that the new complaint was supplemental because Maraziti explicitly sought "leave to file the supplemental pleading 'to allege material facts which occurred **after** the filing of the original Complaint' (ROA 314, Declaration of Kevin A. Carey, ¶ 4)."

Maraziti asserts this was error, and that courts have consistently allowed plaintiffs to file amendments to cure defects in standing. She relies on a line of cases, beginning with *Klopstock v. Superior Court of San Francisco* (1941) 17 Cal.2d 13 (*Klopstock*), addressing substitution of a real

18

party in interest in place of a prior named plaintiff that lacked the authority to sue. (*Id.* at pp. 17–19.) The claims at issue in *Klopstock* arose from allegations concerning the wrongful withdrawal of funds from a corporation held by three brothers. (*Id.* at p. 15.) After one of the brothers and his wife passed, the executor of their will commenced an action on behalf of the corporation, naming the other two brothers as defendants. (*Ibid.*) The trial court sustained a demurrer, finding that the executor could not legally maintain the action on behalf of the corporation, but allowed an amendment to the complaint to substitute the correct nominal plaintiff, the administrator of the estate of the deceased stockholder. (*Id.* at p. 19.)

Finding no error in that result, the appellate court in *Klopstock* explained, although the original complaint stated a cause of action on behalf of someone, it was not the named plaintiff; but, it was proper to allow an amendment to assert the same causes of action by the correct named plaintiff since doing so did not change the claims asserted against the defendants.[3] (*Klopstock, supra*, 17 Cal.2d. at pp. 19–21.) At the same time, the *Klopstock* court acknowledged that an amendment cannot be used to introduce a wholly different cause of action, and clarified, "the test is not whether under technical rules of pleading a new cause of action is introduced, but rather, the

---

[3] The other cases Maraziti relies on follow *Klopstock* and likewise address the addition or substitution of a named plaintiff. (See, e.g., *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [amendment "merely 'substituted' one plaintiff for another on the same cause of action"]; *Foundation of Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 136 [trial court abused discretion by not allowing amendment to add member of injured group as a plaintiff]; *Branick v. Downing Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242–243 [trial courts have discretion to permit amendments adding or striking named plaintiffs].)

test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant." (*Id.* at p. 20.)

Here, Maraziti did not simply seek to substitute a named plaintiff in the supplemental complaint,[4] nor did she seek to assert a whole new cause of action. However, there is no dispute that she did seek to add facts related to events that occurred after the filing of the original complaint. Thus, we are not persuaded that the trial court erred in characterizing the complaint as supplemental rather than amended. Regardless, as we explain next, we focus on the substance of the new complaint, and not its label, in determining whether it relates back to the original.

D.     *The Trial Court Erred in Concluding the Supplemental Complaint Did Not Relate Back to the Original Complaint*

The trial court concluded that the supplemental complaint could not relate back to the original complaint for purposes of the statutes of limitations because, " '[a]s a general rule, where an original pleading is filed before the cause of action has arisen, the defect cannot be cured by a supplemental complaint.' " Maraziti asserts that this was error, and regardless of whether the new complaint was labeled as amended or supplemental, it did relate back to the original complaint, because the original complaint gave Wilmington notice of the same wrongs as asserted in the supplemental complaint.

---

[4]     Notably, the trial court did permit Maraziti to substitute in for Preciado as successor trustee, without dispute from Wilmington.

As an initial matter, we reject the notion that a supplemental complaint can never relate back to the original for purposes of the statutes of limitation. As our high court has explained, "[f]acts occurring after filing of a complaint . . . should be pleaded by supplemental rather than amended complaint (Code Civ. Proc., § 464) but courts regard substance and not labels in determining the sufficiency of a pleading." (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 464, fn. 6.) This includes whether the new pleading is subject to a new limitations period. (*Id.* at p. 464 ["Once an action has been timely commenced by the filing of a complaint, the filing of a supplemental or amended complaint which does not introduce a new cause of action is not subject to the statute of limitations"].)

In its order granting judgment on the pleadings, the trial court here relied on *ITT Gilfillan, Inc. v. City of Los Angeles* (1982) 136 Cal.App.3d 581 (*ITT*) for the proposition that "[s]upplemental pleadings do not relate back to the original complaint and must stand on their own for the purposes of limitations periods." (*Id.* at p. 589.) As we explain, we decline to follow *ITT*. *Hutnick* was decided after *ITT* and is controlling to the extent that the court there reached the opposite conclusion. In addition, there are other more recent cases, including *Bendix Corp. v. City of Los Angeles* (1984) 150 Cal.App.3d 921 (*Bendix*), that reject the bright-line rule set forth in *ITT*, and focus instead on the nature of the claims, consistent with the analysis in *Hutnick*.

*Bendix* was decided just over a year after *ITT* and arose out of the same underlying litigation, concerning the alleged overpayment of taxes based on an improper classification that impacted government contracts. (*Bendix*, *supra*, 150 Cal.App.3d at p. 923.) There were numerous lawsuits surrounding the issue, many of which were consolidated and decided in a test

21

case, the predecessor to *ITT*. (*Bendix*, at p. 923.) After that case was decided, the city refunded Bendix for the tax years 1961 through 1975 but refused to refund payments for 1976 and 1977 based on its alleged failure to make a timely claim for those years. (*Id*. at pp. 923–924.) Disagreeing with *ITT*, the court in *Bendix* concluded that a supplemental and amended complaint that Bendix filed alleging overpayment for those two additional tax years related back to the prior pleadings for purposes of the statute of limitations. (*Id*. at p. 924–926.) The court explained that the original pleadings gave the city adequate notice of Bendix's claims and, although the supplemental complaint was based on new events, the new events were simply " 'a continuation of the old cause of action.' " (*Id*. at p. 926.)

Likewise, here, the allegations in the original complaint gave Wilmington adequate notice of the asserted claims. Although the additional allegations do not relate to additional instances of the same, ongoing conduct or harm as in *Bendix*, they also do not present an entirely different cause of action or basis for recovery. Rather, they relate to the reformation of the Grant Deed. While the reformation is undisputedly an additional action taken by the plaintiff after the initiation of the litigation, it did not change the underlying nature of the claims in any material way. Preciado simply fixed a common defect in the Grant Deed, soon after Wilmington first notified her of the oversight. The reformation of the Grant Deed to grant title to the trustee of the Trust rather than the Trust did not create an entirely separate or new cause of action and should not have been surprising to Wilmington.

Nevertheless, Wilmington asserts the supplemental complaint cannot relate back to the original because neither Preciado nor Maraziti had a cause of action when Preciado filed the original complaint. Wilmington relies on two cases as support for this equally determinative rule, *Cohn v. Cohn* (1941)

22

47 Cal.App.2d 683 (*Cohn*) and *Wittenbrock v. Bellmer* (1880) 57 Cal. 12 (*Wittenbrock*), but neither case addresses the issue in the context of the statutes of limitation.

*Cohn, supra*, 47 Cal.App.2d 683 was an appeal from "an interlocutory decree of divorce" and subsequent order denying a motion for a new trial. (*Id*. at p. 685.) In what the court characterized as "an unusual state of facts not appearing in the ordinary case," after agreeing to a legal separation, the parties stipulated to supplemental complaint seeking divorce based on desertion. (*Id*. at p. 687, 689.) After the trial court entered a decree of divorce finding the allegations in the supplemental complaint true, the defendant asked to withdraw the stipulation, and the trial court denied the request. (*Id*. at pp. 687.) The defendant asserted the action commenced in 1936, and the admitted desertion occurred in 1937, so no cause of action could have accrued at the time of the original filing. Quoting *Wittenbrock,* the appellate court stated, *generally*, " ' "[i]f a party has no cause of action at the time of the institution of his action, he cannot maintain it by filing a supplemental complaint founded on matters which have subsequently occurred." ' " (*Cohn,* at p. 689.) However, the court went on to conclude that that the stipulated supplemental complaint was really a substituted pleading and affirmed the judgment. (*Id*. at pp. 689, 693.)

*Wittenbrock*, in turn, was an appeal from an order granting a new trial and, in reviewing the evidence before the trial court, the appellate court concluded it was improper to consider a ratification of an assignment that occurred while the action was pending. (*Wittenbrock, supra,* 57 Cal. at p. 13.) But there, the plaintiff was attempting to foreclose on a mortgage that, allegedly, had not been validly assigned to him. (*Ibid*.) Notably, the court did not comment on whether the plaintiff could initiate a new foreclosure

proceeding following the ratification of the assignment. (*Ibid*.) Thus, we do not find either case to be particularly helpful in resolving the issue that is now before us, namely, whether the supplemental complaint can relate back to the original complaint for purposes of the statute of limitations.

In answering that question, we consider that the policy behind statutes of limitation is to ensure defendants are adequately notified of the need to prepare a defense against the asserted claims. (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277 (*Pointe*).) Thus, "the critical inquiry" in determining whether a supplemental complaint relates back to the original for the purposes of statute of limitations, "is whether the defendant had adequate notice of the claim based on the original pleading." (*Ibid*.)

In *Pointe*, this court addressed a situation in which the plaintiff filed an amended complaint providing detailed factual allegations after originally filing only a form complaint that provided minimal details regarding the asserted claims. (*Pointe, supra,* 195 Cal.App.4th at pp. 277−278.) The defendant demurred, and the trial court sustained the demurrer on the basis that the claims were time-barred, and that "the relation-back doctrine was inapplicable because the original complaint did not contain sufficient factual allegations" to state the asserted causes of action. (*Id*. at p. 273.) The Court of Appeal reversed and explained that "courts have long recognized that the fact that an original complaint contained pleading deficiencies does not preclude the application of the relation-back doctrine." (*Id*. at p. 281.) "If 'the original complaint defectively states a cause of action, it may be amended after the running of the statute [of limitations] [to add additional factual allegations] as long as the cause of action stated in the amended pleading can trace its descent from the original pleading.' " (*Ibid*.)

24

Here, the additional allegations in the supplemental complaint similarly address deficiencies in the original complaint and, specially, the now-corrected error in the underlying Grant Deed. The property at issue, the name of the plaintiff Trust, the purported trustee of that Trust, and the causes of action remained the same. The only material change in the supplemental complaint was to establish that the Grant Deed granted title to Preciado (named in the original complaint), as the trustee of the Trust, as the parties always intended. Considering the allegations in the original complaint, we cannot conclude that Wilmington did not have adequate notice to prepare a defense against those claims. Indeed, although the trial court ultimately did grant a preliminary injunction, Wilmington presented a defense in response to that motion and, notably, did not raise the issue of the defect in the underlying Grant Deed until sometime later.

Accordingly, we conclude that the supplemental complaint does adequately relate back to the original complaint for the purpose of the statutes of limitations, and therefore the trial court erred in concluding that Maraziti's claims are time-barred.[5]

---

[5] Because we reverse the trial court's order granting judgment on the pleadings for this reason, we need not address Maraziti's remaining arguments.

## IV.      DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with instructions to reverse its prior order granting judgment on the pleadings and enter a new order denying Wilmington's motion for judgment on the pleadings.  Appellant is awarded costs on appeal.


                                                            KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.